(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MISSOURI *v.* FRYE

CERTIORARI TO THE COURT OF APPEALS OF MISSOURI, WEST-
ERN DISTRICT

No. 10–444.   Argued October 31, 2011—Decided March 21, 2012

Respondent Frye was charged with driving with a revoked license.  Be-
cause he had been convicted of the same offense three times before,
he was charged, under Missouri law, with a felony carrying a maxi-
mum 4-year prison term.  The prosecutor sent Frye's counsel a letter,
offering two possible plea bargains, including an offer to reduce the
charge to a misdemeanor and to recommend, with a guilty plea, a 90-
day sentence.  Counsel did not convey the offers to Frye, and they ex-
pired.  Less than a week before Frye's preliminary hearing, he was
again arrested for driving with a revoked license.  He subsequently
pleaded guilty with no underlying plea agreement and was sentenced
to three years in prison.  Seeking postconviction relief in state court,
he alleged his counsel's failure to inform him of the earlier plea offers
denied him the effective assistance of counsel, and he testified that
he would have pleaded guilty to the misdemeanor had he known of
the offer.  The court denied his motion, but the Missouri appellate
court reversed, holding that Frye met both of the requirements for
showing a Sixth Amendment violation under *Strickland* v. *Washing-
ton*, 466 U. S. 668.  Specifically, the court found that defense counsel
had been ineffective in not communicating the plea offers to Frye and
concluded that Frye had shown that counsel's deficient performance
caused him prejudice because he pleaded guilty to a felony instead of
a misdemeanor.

*Held*:

    1. The Sixth Amendment right to effective assistance of counsel ex-
tends to the consideration of plea offers that lapse or are rejected.
That right applies to "all 'critical' stages of the criminal proceedings."
*Montejo* v. *Louisiana*, 556 U. S. 778, 786.  *Hill* v. *Lockhart*, 474 U. S.
52, established that *Strickland*'s two-part test governs ineffective-

assistance claims in the plea bargain context. There, the defendant had alleged that his counsel had given him inadequate advice about his plea, but he failed to show that he would have proceeded to trial had he received the proper advice. 474 U. S., at 60. In *Padilla* v. *Kentucky*, 559 U. S. ___, where a plea offer was set aside because counsel had misinformed the defendant of its immigration consequences, this Court made clear that "the negotiation of a plea bargain is a critical" stage for ineffective-assistance purposes, *id.,* at ___, and rejected the argument made by the State in this case that a knowing and voluntary plea supersedes defense counsel's errors. The State attempts to distinguish *Hill* and *Padilla* from the instant case. It notes that *Hill* and *Padilla* concerned whether there was ineffective assistance leading to acceptance of a plea offer, a process involving a formal court appearance with the defendant and all counsel present, while no formal court proceedings are involved when a plea offer has lapsed or been rejected; and it insists that there is no right to receive a plea offer in any event. Thus, the State contends, it is unfair to subject it to the consequences of defense counsel's inadequacies when the opportunities for a full and fair trial, or for a later guilty plea albeit on less favorable terms, are preserved. While these contentions are neither illogical nor without some persuasive force, they do not suffice to overcome the simple reality that 97 percent of federal convictions and 94 percent of state convictions are the result of guilty pleas. Plea bargains have become so central to today's criminal justice system that defense counsel must meet responsibilities in the plea bargain process to render the adequate assistance of counsel that the Sixth Amendment requires at critical stages of the criminal process. Pp. 3–8.

2. As a general rule, defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to this rule need not be addressed here, for the offer was a formal one with a fixed expiration date. Standards for prompt communication and consultation recommended by the American Bar Association and adopted by numerous state and federal courts, though not determinative, serve as important guides. The prosecution and trial courts may adopt measures to help ensure against late, frivolous, or fabricated claims. First, a formal offer's terms and processing can be documented. Second, States may require that all offers be in writing. Third, formal offers can be made part of the record at any subsequent plea proceeding or before trial to ensure that a defendant has been fully advised before the later proceedings commence. Here, as the result of counsel's deficient performance, the offers lapsed. Under *Strickland*, the question then becomes what, if any, prejudice resulted from the

breach of duty. Pp. 8–11.

    3. To show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability both that they would have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it, if they had the authority to exercise that discretion under state law. This application of *Strickland* to uncommunicated, lapsed pleas does not alter *Hill*'s standard, which requires a defendant complaining that ineffective assistance led him to accept a plea offer instead of going to trial to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U. S., at 59. *Hill* correctly applies in the context in which it arose, but it does not provide the sole means for demonstrating prejudice arising from counsel's deficient performance during plea negotiations. Because Frye argues that with effective assistance he would have accepted an earlier plea offer as opposed to entering an open plea, *Strickland*'s inquiry into whether "the result of the proceeding would have been different," 466 U. S., at 694, requires looking not at whether the defendant would have proceeded to trial but at whether he would have accepted the earlier plea offer. He must also show that, if the prosecution had the discretion to cancel the plea agreement or the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is particularly important because a defendant has no right to be offered a plea, see *Weatherford* v. *Bursey,* 429 U. S. 545, 561, nor a federal right that the judge accept it, *Santobello* v. *New York*, 404 U. S. 257, 262. Missouri, among other States, appears to give the prosecution some discretion to cancel a plea agreement; and the Federal Rules of Criminal Procedure, some state rules, including Missouri's, and this Court's precedents give trial courts some leeway to accept or reject plea agreements. Pp. 11–13.

    4. Applying these standards here, the Missouri court correctly concluded that counsel's failure to inform Frye of the written plea offer before it expired fell below an objective reasonableness standard, but it failed to require Frye to show that the plea offer would have been adhered to by the prosecution and accepted by the trial court. These matters should be addressed by the Missouri appellate court in the first instance. Given that Frye's new offense for driving without a license occurred a week before his preliminary hearing, there is reason to doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it unless they were re-

quired by state law to do so.  Pp. 13–15.

311 S. W. 3d 350, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined.  SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., and THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–444

## MISSOURI, PETITIONER *v.* GALIN E. FRYE

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MISSOURI, WESTERN DISTRICT

[March 21, 2012]

JUSTICE KENNEDY delivered the opinion of the Court.

The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel. See *Strickland* v. *Washington*, 466 U. S. 668, 686 (1984). This case arises in the context of claimed ineffective assistance that led to the lapse of a prosecution offer of a plea bargain, a proposal that offered terms more lenient than the terms of the guilty plea entered later. The initial question is whether the constitutional right to counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. If there is a right to effective assistance with respect to those offers, a further question is what a defendant must demonstrate in order to show that prejudice resulted from counsel's deficient performance. Other questions relating to ineffective assistance with respect to plea offers, including the question of proper remedies, are considered in a second case decided today. See *Lafler* v. *Cooper, post,* at 3–16.

## I

In August 2007, respondent Galin Frye was charged with driving with a revoked license. Frye had been convicted for that offense on three other occasions, so the State of Missouri charged him with a class D felony, which carries a maximum term of imprisonment of four years. See Mo. Rev. Stat. §§302.321.2, 558.011.1(4) (2011).

On November 15, the prosecutor sent a letter to Frye's counsel offering a choice of two plea bargains. App. 50. The prosecutor first offered to recommend a 3-year sentence if there was a guilty plea to the felony charge, without a recommendation regarding probation but with a recommendation that Frye serve 10 days in jail as so-called "shock" time. The second offer was to reduce the charge to a misdemeanor and, if Frye pleaded guilty to it, to recommend a 90-day sentence. The misdemeanor charge of driving with a revoked license carries a maximum term of imprisonment of one year. 311 S. W. 3d 350, 360 (Mo. App. 2010). The letter stated both offers would expire on December 28. Frye's attorney did not advise Frye that the offers had been made. The offers expired. *Id.,* at 356.

Frye's preliminary hearing was scheduled for January 4, 2008. On December 30, 2007, less than a week before the hearing, Frye was again arrested for driving with a revoked license. App. 47–48, 311 S. W. 3d, at 352–353. At the January 4 hearing, Frye waived his right to a preliminary hearing on the charge arising from the August 2007 arrest. He pleaded not guilty at a subsequent arraignment but then changed his plea to guilty. There was no underlying plea agreement. App. 5, 13, 16. The state trial court accepted Frye's guilty plea. *Id.,* at 21. The prosecutor recommended a 3-year sentence, made no recommendation regarding probation, and requested 10 days shock time in jail. *Id.,* at 22. The trial judge sentenced Frye to three years in prison. *Id.,* at 21, 23.

Frye filed for postconviction relief in state court. *Id.,* at 8, 25–29. He alleged his counsel's failure to inform him of the prosecution's plea offer denied him the effective assistance of counsel. At an evidentiary hearing, Frye testified he would have entered a guilty plea to the misdemeanor had he known about the offer. *Id.,* at 34.

A state court denied the postconviction motion, *id.,* at 52–57, but the Missouri Court of Appeals reversed, 311 S. W. 3d 350. It determined that Frye met both of the requirements for showing a Sixth Amendment violation under *Strickland.* First, the court determined Frye's counsel's performance was deficient because the "record is void of any evidence of any effort by trial counsel to communicate the Offer to Frye during the Offer window." 311 S. W. 3d, at 355, 356 (emphasis deleted). The court next concluded Frye had shown his counsel's deficient performance caused him prejudice because "Frye pled guilty to a felony instead of a misdemeanor and was subject to a maximum sentence of four years instead of one year." *Id.,* at 360.

To implement a remedy for the violation, the court deemed Frye's guilty plea withdrawn and remanded to allow Frye either to insist on a trial or to plead guilty to any offense the prosecutor deemed it appropriate to charge. This Court granted certiorari. 562 U. S. ___ (2011).

## II

### A

It is well settled that the right to the effective assistance of counsel applies to certain steps before trial. The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo* v. *Louisiana*, 556 U. S. 778, 786 (2009) (quoting *United States* v. *Wade*, 388 U. S. 218, 227–228 (1967)). Critical stages include arraignments, postindict-

ment interrogations, postindictment lineups, and the entry of a guilty plea. See *Hamilton* v. *Alabama*, 368 U. S. 52 (1961) (arraignment); *Massiah* v. *United States*, 377 U. S. 201 (1964) (postindictment interrogation); *Wade*, *supra* (postindictment lineup); *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972) (guilty plea).

With respect to the right to effective counsel in plea negotiations, a proper beginning point is to discuss two cases from this Court considering the role of counsel in advising a client about a plea offer and an ensuing guilty plea: *Hill* v. *Lockhart*, 474 U. S. 52 (1985); and *Padilla* v. *Kentucky*, 559 U. S. ___(2010).

*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. See *Hill*, *supra,* at 57. As noted above, in Frye's case, the Missouri Court of Appeals, applying the two part test of *Strickland*, determined first that defense counsel had been ineffective and second that there was resulting prejudice.

In *Hill*, the decision turned on the second part of the *Strickland* test. There, a defendant who had entered a guilty plea claimed his counsel had misinformed him of the amount of time he would have to serve before he became eligible for parole. But the defendant had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial. Thus, the Court found that no prejudice from the inadequate advice had been shown or alleged. *Hill*, *supra,* at 60.

In *Padilla*, the Court again discussed the duties of counsel in advising a client with respect to a plea offer that leads to a guilty plea. *Padilla* held that a guilty plea, based on a plea offer, should be set aside because counsel misinformed the defendant of the immigration consequences of the conviction. The Court made clear that "the negotiation of a plea bargain is a critical phase of litiga-

tion for purposes of the Sixth Amendment right to effective assistance of counsel." 559 U. S., at ___ (slip op., at 16). It also rejected the argument made by petitioner in this case that a knowing and voluntary plea supersedes errors by defense counsel. Cf. Brief for Respondent in *Padilla* v. *Kentucky*, O. T. 2009, No. 08–651, p. 27 (arguing Sixth Amendment's assurance of effective assistance "does not extend to collateral aspects of the prosecution" because "knowledge of the consequences that are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea").

In the case now before the Court the State, as petitioner, points out that the legal question presented is different from that in *Hill* and *Padilla*. In those cases the claim was that the prisoner's plea of guilty was invalid because counsel had provided incorrect advice pertinent to the plea. In the instant case, by contrast, the guilty plea that was accepted, and the plea proceedings concerning it in court, were all based on accurate advice and information from counsel. The challenge is not to the advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers.

To give further support to its contention that the instant case is in a category different from what the Court considered in *Hill* and *Padilla*, the State urges that there is no right to a plea offer or a plea bargain in any event. See *Weatherford* v. *Bursey*, 429 U. S. 545, 561 (1977). It claims Frye therefore was not deprived of any legal benefit to which he was entitled. Under this view, any wrongful or mistaken action of counsel with respect to earlier plea offers is beside the point.

The State is correct to point out that *Hill* and *Padilla* concerned whether there was ineffective assistance leading to acceptance of a plea offer, a process involving a formal court appearance with the defendant and all coun-

sel present. Before a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the State substantial protection against later claims that the plea was the result of inadequate advice. At the plea entry proceedings the trial court and all counsel have the opportunity to establish on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences or possibilities that will ensue once a conviction is entered based upon the plea. See, *e.g.,* Fed. Rule Crim. Proc. 11; Mo. Sup. Ct. Rule 24.02 (2004). *Hill* and *Padilla* both illustrate that, nevertheless, there may be instances when claims of ineffective assistance can arise after the conviction is entered. Still, the State, and the trial court itself, have had a substantial opportunity to guard against this contingency by establishing at the plea entry proceeding that the defendant has been given proper advice or, if the advice received appears to have been inadequate, to remedy that deficiency before the plea is accepted and the conviction entered.

When a plea offer has lapsed or been rejected, however, no formal court proceedings are involved. This underscores that the plea-bargaining process is often in flux, with no clear standards or timelines and with no judicial supervision of the discussions between prosecution and defense. Indeed, discussions between client and defense counsel are privileged. So the prosecution has little or no notice if something may be amiss and perhaps no capacity to intervene in any event. And, as noted, the State insists there is no right to receive a plea offer. For all these reasons, the State contends, it is unfair to subject it to the consequences of defense counsel's inadequacies, especially when the opportunities for a full and fair trial, or, as here, for a later guilty plea albeit on less favorable terms, are preserved.

The State's contentions are neither illogical nor without some persuasive force, yet they do not suffice to overcome a simple reality. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. See Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009, http://www.albany.edu/sourcebook/pdf/t5222009.pdf (all Internet materials as visited Mar. 1, 2012, and available in Clerk of Court's case file); Dept. of Justice, Bureau of Justice Statistics, S. Rosenmerkel, M. Durose, & D. Farole, Felony Sentences in State Courts, 2006-Statistical Tables, p. 1 (NCJ226846, rev. Nov. 2010), http://bjs.ojp.usdoj.gov/content/pub/pdf/fssc06st.pdf; *Padilla*, *supra,* at ___ (slip op., at 15) (recognizing pleas account for nearly 95% of all criminal convictions). The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," *Lafler*, *post*, at 11, it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system." Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992). See also Barkow, Separation of Powers and the Criminal Law, 58 Stan. L. Rev. 989, 1034 (2006) ("[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for

bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial" (footnote omitted)). In to-day's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

To note the prevalence of plea bargaining is not to criti-cize it. The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defend-ants require effective counsel during plea negotiations. "Anything less . . . might deny a defendant 'effective repre-sentation by counsel at the only stage when legal aid and advice would help him.'" *Massiah*, 377 U. S., at 204 (quot-ing *Spano* v. *New York*, 360 U. S. 315, 326 (1959) (Doug-las, J., concurring)).

B

The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process. This is a difficult question. "The art of negotia-tion is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision." *Premo* v. *Moore,* 562 U. S. ___, ___ (2011) (slip op., at 8–9). Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so indi-vidual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process. Cf. *ibid.*

This case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects,

however. Here the question is whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both.

This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date. When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides. The American Bar Association recommends defense counsel "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney," ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999), and this standard has been adopted by numerous state and federal courts over the last 30 years. See, *e.g., Davie* v. *State*, 381 S. C. 601, 608–609, 675 S. E. 2d 416, 420 (2009); *Cottle* v. *State*, 733 So. 2d 963, 965–966 (Fla. 1999); *Becton* v. *Hun*, 205 W. Va. 139, 144, 516 S. E. 2d 762, 767 (1999); *Harris* v. *State*, 875 S. W. 2d 662, 665 (Tenn. 1994); *Lloyd* v. *State*, 258 Ga. 645, 648, 373 S. E. 2d 1, 3 (1988); *United States* v. *Rodriguez Rodriguez*, 929 F. 2d 747, 752 (CA1 1991) *(per curiam); Pham* v. *United States*, 317 F. 3d 178, 182 (CA2 2003); *United States ex rel. Caruso* v. *Zelinsky*, 689 F. 2d 435, 438 (CA3 1982); *Griffin* v. *United States*, 330 F. 3d 733, 737 (CA6 2003); *Johnson* v. *Duckworth*, 793 F. 2d 898, 902 (CA7 1986); *United States* v. *Blaylock*, 20 F. 3d 1458, 1466 (CA9 1994); cf. *Diaz* v. *United States*, 930 F. 2d

832, 834 (CA11 1991). The standard for prompt communi-
cation and consultation is also set out in state bar profes-
sional standards for attorneys. See, *e.g.,* Fla. Rule Regu-
lating Bar 4–1.4 (2008); Ill. Rule Prof. Conduct 1.4 (2011);
Kan. Rule Prof. Conduct 1.4 (2010); Ky. Sup. Ct. Rule
3.130, Rule Prof. Conduct 1.4 (2011); Mass. Rule Prof.
Conduct 1.4 (2011–2012); Mich. Rule Prof. Conduct 1.4
(2011).

The prosecution and the trial courts may adopt some
measures to help ensure against late, frivolous, or fabri-
cated claims after a later, less advantageous plea offer has
been accepted or after a trial leading to conviction with
resulting harsh consequences. First, the fact of a formal
offer means that its terms and its processing can be docu-
mented so that what took place in the negotiation process
becomes more clear if some later inquiry turns on the
conduct of earlier pretrial negotiations. Second, States
may elect to follow rules that all offers must be in writing,
again to ensure against later misunderstandings or fabri-
cated charges. See N. J. Ct. Rule 3:9–1(b) (2012) ("Any
plea offer to be made by the prosecutor shall be in writing
and forwarded to the defendant's attorney"). Third, formal
offers can be made part of the record at any subsequent
plea proceeding or before a trial on the merits, all to en-
sure that a defendant has been fully advised before those
further proceedings commence. At least one State often
follows a similar procedure before trial. See Brief for
National Association of Criminal Defense Lawyers et al.
as *Amici Curiae* 20 (discussing hearings in Arizona con-
ducted pursuant to *State* v. *Donald*, 198 Ariz. 406, 10 P. 3d
1193 (App. 2000)); see also N. J. Ct. Rules 3:9–1(b), (c)
(requiring the prosecutor and defense counsel to discuss
the case prior to the arraignment/status conference includ-
ing any plea offers and to report on these discussions in
open court with the defendant present); *In re Alvernaz*, 2
Cal. 4th 924, 938, n. 7, 830 P. 2d 747, 756, n. 7 (1992)

(encouraging parties to "memorialize in some fashion prior to trial (1) the fact that a plea bargain offer was made, and (2) that the defendant was advised of the offer [and] its precise terms, . . . and (3) the defendant's response to the plea bargain offer"); Brief for Center on the Administration of Criminal Law, New York University School of Law as *Amicus Curiae* 25–27.

Here defense counsel did not communicate the formal offers to the defendant. As a result of that deficient performance, the offers lapsed. Under *Strickland*, the question then becomes what, if any, prejudice resulted from the breach of duty.

C

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Cf. *Glover* v. *United States*, 531 U. S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

This application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*. In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U. S., at 59. *Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations. Unlike the defendant in *Hill*, Frye argues that with effective assistance he would have accepted an earlier plea offer (limiting his sentence to one year in prison) as opposed to entering an open plea (exposing him to a maximum sentence of four years' imprisonment). In a case, such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether "the result of the proceeding would have been different," 466 U. S., at 694, requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed.

In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, see *Weatherford*, 429 U. S., at 561, nor a federal right that the judge accept it, *Santobello* v. *New York*, 404 U. S. 257, 262 (1971). In at least some States, including Missouri, it appears the prosecution has some discretion to cancel a plea agreement to which the defendant has agreed, see, *e.g.,* 311 S. W. 3d, at 359 (case below); Ariz. Rule Crim. Proc. 17.4(b) (Supp. 2011). The Federal

Rules, some state rules including in Missouri, and this Court's precedents give trial courts some leeway to accept or reject plea agreements, see Fed. Rule Crim. Proc. 11(c)(3); see Mo. Sup. Ct. Rule 24.02(d)(4); *Boykin* v. *Alabama*, 395 U. S. 238, 243–244 (1969). It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework.

## III

These standards must be applied to the instant case. As regards the deficient performance prong of *Strickland*, the Court of Appeals found the "record is void of *any* evidence of *any* effort by trial counsel to communicate the [formal] Offer to Frye during the Offer window, let alone any evidence that Frye's conduct interfered with trial counsel's ability to do so." 311 S. W. 3d, at 356. On this record, it is evident that Frye's attorney did not make a meaningful attempt to inform the defendant of a written plea offer before the offer expired. See *supra,* at 2. The Missouri Court of Appeals was correct that "counsel's representation fell below an objective standard of reasonableness." *Strickland, supra,* at 688.

The Court of Appeals erred, however, in articulating the precise standard for prejudice in this context. As noted, a defendant in Frye's position must show not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution

would have adhered to the agreement and that it would have been accepted by the trial court. Frye can show he would have accepted the offer, but there is strong reason to doubt the prosecution and the trial court would have permitted the plea bargain to become final.

There appears to be a reasonable probability Frye would have accepted the prosecutor's original offer of a plea bargain if the offer had been communicated to him, because he pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the prosecutor. It may be that in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer. For example, revelations between plea offers about the strength of the prosecution's case may make a late decision to plead guilty insufficient to demonstrate, without further evidence, that the defendant would have pleaded guilty to an earlier, more generous plea offer if his counsel had reported it to him. Here, however, that is not the case. The Court of Appeals did not err in finding Frye's acceptance of the less favorable plea offer indicated that he would have accepted the earlier (and more favorable) offer had he been apprised of it; and there is no need to address here the showings that might be required in other cases.

The Court of Appeals failed, however, to require Frye to show that the first plea offer, if accepted by Frye, would have been adhered to by the prosecution and accepted by the trial court. Whether the prosecution and trial court are required to do so is a matter of state law, and it is not the place of this Court to settle those matters. The Court has established the minimum requirements of the Sixth Amendment as interpreted in *Strickland*, and States have the discretion to add procedural protections under state law if they choose. A State may choose to preclude the prosecution from withdrawing a plea offer once it has been accepted or perhaps to preclude a trial court from rejecting

a plea bargain. In Missouri, it appears "a plea offer once accepted by the defendant can be withdrawn without recourse" by the prosecution. 311 S. W. 3d, at 359. The extent of the trial court's discretion in Missouri to reject a plea agreement appears to be in some doubt. Compare *id.,* at 360, with Mo. Sup. Ct. Rule 24.02(d)(4).

We remand for the Missouri Court of Appeals to consider these state-law questions, because they bear on the federal question of *Strickland* prejudice. If, as the Missouri court stated here, the prosecutor could have canceled the plea agreement, and if Frye fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice. Likewise, if the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice. In this case, given Frye's new offense for driving without a license on December 30, 2007, there is reason to doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it at the January 4, 2008, hearing, unless they were required by state law to do so.

It is appropriate to allow the Missouri Court of Appeals to address this question in the first instance. The judgment of the Missouri Court of Appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

No. 10–444

---

## MISSOURI, PETITIONER *v.* GALIN E. FRYE

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF
MISSOURI, WESTERN DISTRICT

[March 21, 2012]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE,
JUSTICE THOMAS, and JUSTICE ALITO join, dissenting.

This is a companion case to *Lafler* v. *Cooper, post,* p. \_\_\_.
The principal difference between the cases is that the
fairness of the defendant's conviction in *Lafler* was estab-
lished by a full trial and jury verdict, whereas Frye's
conviction here was established by his own admission of
guilt, received by the court after the usual colloquy that
assured it was voluntary and truthful. In *Lafler* all that
could be said (and as I discuss there it was quite enough)
is that the *fairness* of the conviction was clear, though a
unanimous jury finding beyond a reasonable doubt can
sometimes be wrong. Here it can be said not only that the
process was fair, but that the defendant acknowledged the
correctness of his conviction. Thus, as far as the reasons
for my dissent are concerned, this is an *a fortiori* case. I
will not repeat here the constitutional points that I discuss
at length in *Lafler*, but I will briefly apply those points to
the facts here and comment upon a few statements in the
Court's analysis.

\*    \*    \*

Galin Frye's attorney failed to inform him about a plea
offer, and Frye ultimately pleaded guilty without the
benefit of a deal. Counsel's mistake did not deprive Frye
of any substantive or procedural right; only of the oppor-

tunity to accept a plea bargain to which he had no enti-
tlement in the first place. So little entitlement that, had
he known of and accepted the bargain, the prosecution
would have been able to withdraw it right up to the point
that his guilty plea pursuant to the bargain was accepted.
See 311 S. W. 3d 350, 359, and n. 4 (Mo. App. 2010).

The Court acknowledges, moreover, that Frye's convic-
tion was untainted by attorney error: "[T]he guilty plea
that was accepted, and the plea proceedings concerning it
in court, were all based on accurate advice and infor-
mation from counsel." *Ante,* at 5. Given the "ultimate
focus" of our ineffective-assistance cases on "the funda-
mental fairness of the proceeding whose result is being
challenged," *Strickland* v. *Washington*, 466 U. S. 668, 696
(1984), that should be the end of the matter. Instead,
here, as in *Lafler*, the Court mechanically applies an
outcome-based test for prejudice, and mistakes the possi-
bility of a different result for constitutional injustice. As
I explain in *Lafler, post,* p. ___ (dissenting opinion), that
approach is contrary to our precedents on the right to
effective counsel, and for good reason.

The Court announces its holding that "as a general rule,
defense counsel has the duty to communicate formal offers
from the prosecution" as though that resolves a disputed
point; in reality, however, neither the State nor the Solici-
tor General argued that counsel's performance here was
adequate. *Ante,* at 9. The only issue was whether the in-
adequacy deprived Frye of his constitutional right to a
fair trial. In other cases, however, it will not be so clear
that counsel's plea-bargaining skills, which must now
meet a constitutional minimum, are adequate. "[H]ow to
define the duty and responsibilities of defense counsel in
the plea bargain process," the Court acknowledges, "is a
difficult question," since "[b]argaining is, by its nature,
defined to a substantial degree by personal style." *Ante*, at
8. Indeed. What if an attorney's "personal style" is to

establish a reputation as a hard bargainer by, for example, advising clients to proceed to trial rather than accept anything but the most favorable plea offers? It seems inconceivable that a lawyer could compromise his client's *constitutional rights* so that he can secure better deals for other clients in the future; does a hard-bargaining "personal style" now violate the Sixth Amendment? The Court ignores such difficulties, however, since "[t]his case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects." *Ante,* at 8. Perhaps not. But it does present the necessity of confronting the serious difficulties that will be created by constitutionalization of the plea-bargaining process. It will not do simply to announce that they will be solved in the sweet by-and-by.

While the inadequacy of counsel's performance in this case is clear enough, whether it was prejudicial (in the sense that the Court's new version of *Strickland* requires) is not. The Court's description of how that question is to be answered on remand is alone enough to show how unwise it is to constitutionalize the plea-bargaining process. Prejudice is to be determined, the Court tells us, by a process of retrospective crystal-ball gazing posing as legal analysis. First of all, of course, we must estimate whether the defendant *would have accepted* the earlier plea bargain. Here that seems an easy question, but as the Court acknowledges, *ante,* at 14, it will not always be. Next, since Missouri, like other States, permits accepted plea offers to be withdrawn by the prosecution (a reality which alone should suffice, one would think, to demonstrate that Frye had no entitlement to the plea bargain), we must estimate whether the prosecution *would have withdrawn* the plea offer. And finally, we must estimate whether the trial court *would have approved* the plea agreement. These last two estimations may seem easy in the present case, since Frye committed a new infraction

before the hearing at which the agreement would have been presented; but they assuredly will not be easy in the mine run of cases.

The Court says "[i]t can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences." *Ante,* at 13. Assuredly it can, just as it can be assumed that the sun rises in the west; but I know of no basis for the assumption. Virtually no cases deal with the standards for a prosecutor's withdrawal from a plea agreement beyond stating the general rule that a prosecutor may withdraw any time prior to, but not after, the entry of a guilty plea or other action constituting detrimental reliance on the defendant's part. See, *e.g., United States* v. *Kuchinski*, 469 F. 3d 853, 857–858 (CA9 2006). And cases addressing trial courts' authority to accept or reject plea agreements almost universally observe that a trial court enjoys broad discretion in this regard. See, *e.g., Missouri* v. *Banks*, 135 S. W. 3d 497, 500 (Mo. App. 2004) (trial court abuses its discretion in rejecting a plea only if the decision "is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration" (internal quotation marks omitted)). Of course after today's opinions there will be cases galore, so the Court's *assumption* would better be cast as an optimistic *prediction* of the certainty that will emerge, many years hence, from our newly created constitutional field of plea-bargaining law. Whatever the "boundaries" ultimately devised (if that were possible), a vast amount of discretion will still remain, and it is extraordinary to make a defendant's constitutional rights depend upon a series of retrospective mind-readings as to how that discretion, in prosecutors and trial judges, *would have been* exercised.

The plea-bargaining process is a subject worthy of regulation, since it is the means by which most criminal convictions are obtained. It happens not to be, however, a

subject covered by the Sixth Amendment, which is concerned not with the fairness of bargaining but with the fairness of conviction. "The Constitution . . . is not an all-purpose tool for judicial construction of a perfect world; and when we ignore its text in order to make it that, we often find ourselves swinging a sledge where a tack hammer is needed." *Padilla* v. *Kentucky*, 559 U. S. \_\_\_, \_\_\_ (2010) (SCALIA, J., dissenting) (slip op., at 1). In this case and its companion, the Court's sledge may require the reversal of perfectly valid, eminently just, convictions. A legislature could solve the problems presented by these cases in a much more precise and efficient manner. It might begin, for example, by penalizing the attorneys who made such grievous errors. That type of sub-constitutional remedy is not available to the Court, which is limited to penalizing (almost) everyone else by reversing valid convictions or sentences. Because that result is inconsistent with the Sixth Amendment and decades of our precedent, I respectfully dissent.