**Basillo BENITEZ, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11–CO–1537.

District of Columbia Court of Appeals.

Argued Jan. 9, 2013.
Decided Feb. 21, 2013.

Deborah A. Persico for appellant. Joseph Virgilio was on the brief for appellant.

John P. Gidez, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, and James S. Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and TERRY, Senior Judge.

GLICKMAN, Associate Judge:

Prior to their trial on charges of assault with intent to kill while armed and other offenses, the government extended "wired" plea offers to appellant Basillo Benitez and his co-defendant, Carlos Sarmiento–Morales. The offers were not accepted, and the two men were tried and convicted on several counts. Benitez subsequently moved the trial court to vacate his convic-

tions because his defense attorney never informed him of the government's offer, thereby denying him his Sixth Amendment right to the effective assistance of counsel. After an evidentiary hearing, the court credited Benitez's claim and found that he would have accepted the plea offer had he been advised of it. The court found, however, that Benitez would have been unable to go through with the proposed plea because there was no evidence that the government would have "unwired" it or that his co-defendant also would have accepted the plea offer. Concluding that Benitez therefore did not show prejudice from his counsel's failure to inform him of the plea offer, the court denied relief. Benitez has appealed that decision to this court.

We agree with the trial court that Benitez did not make a sufficient showing of prejudice. For the reasons stated below, we remand for further proceedings on Benitez's claim.

I.

On November 21, 2004, according to the government's evidence at trial, Benitez and Sarmiento–Morales forced their way into the apartment of Virgilio Argueta and demanded money. When Argueta refused to give it to them, Sarmiento–Morales fetched a knife from the kitchen and gave it to Benitez, who proceeded to stab Argueta in the abdomen. Taking cash and other property belonging to Argueta, Benitez and Sarmiento–Morales then left the apartment. Argueta survived the stabbing and reported it to the police.

Eventually, Benitez and Sarmiento–Morales were arrested and charged with first-degree burglary, assault with intent to kill while armed, aggravated assault while armed, armed robbery, and other offenses arising out of the November 21 incident. Benitez was also charged with having threatened and assaulted Argueta

in a separate encounter on November 16, 2004, five days before the stabbing.

Following their indictment, the government extended identical written plea offers to Benitez and his co-defendant. In exchange for each defendant's plea of guilty to first-degree burglary, the government was prepared to dismiss all of the other charges and (if certain conditions were met) to agree not to allocute for more than the lowest period of incarceration in the applicable guideline range.[1] The government specified that the plea offers were "wired," meaning it was a condition of each defendant's offer that his co-defendant accept the offer too.

The offers expired on July 28, 2005. At a pretrial hearing on that date, the prosecutor informed the judge in the presence of both defendants and their counsel that the "defendants are rejecting the Government's plea offer." No defendant or defense counsel said anything in response to this statement.

Trial commenced a few weeks later. In the end, the jury acquitted Benitez and Sarmiento–Morales of first-degree burglary and armed robbery but found them guilty of assault with intent to kill while armed, aggravated assault while armed, and other, lesser offenses in connection with the November 21 incident. Benitez was found not guilty of the assault and threat charges relating to the November 16 incident. On November 28, 2005, the trial court sentenced him to serve 132 months in prison. This court affirmed his convictions on direct appeal.[2]

While his appeal was pending, Benitez filed a motion in the trial court to vacate his conviction pursuant to D.C.Code § 23–110 (2001) alleging ineffective assistance of counsel. At an evidentiary hearing on the motion, Benitez testified that his defense attorney, Howard McEachern, failed to apprise him of the government's plea offer, thereby depriving him of the opportunity to accept that offer and limit his sentencing exposure. Benitez claimed that he would have accepted the offer had he been informed of it. The government disputed each of these assertions. It called McEachern, who testified that he was confident he discussed the plea offer with Benitez, even though he did not specifically remember doing so, and that Benitez steadfastly maintained his innocence. No other witnesses appeared at the hearing. At its conclusion, after confirming that the parties had no additional evidence to present, the court declared the evidentiary record closed ("I'm going to cut off the admission of any further evidence.... [O]nce I stop today there is not going to be any more evidence.") and proceeded to hear argument.

Following the argument, the court observed that while the parties had disputed whether McEachern had informed Benitez of the plea offer and whether Benitez would have taken it, there was another issue they had ignored: whether it would have been possible for Benitez to accept the government's offer and obtain its benefits, given that the offers extended to him and his co-defendant were wired. Even assuming Benitez would have wanted to plead guilty on the government's terms,

---

**1.** The Superior Court Voluntary Sentencing Guidelines provided a sentencing range of 48 to 96 months for a defendant with Benitez's criminal history upon conviction of first-degree burglary. Because the record before us does not disclose Sarmiento–Morales's criminal history, we do not know what the applicable guideline sentencing range would have been for him.

**2.** *Benitez v. United States,* 05–CF–1507 (D.C. July 17, 2008) (memorandum opinion and judgment).

the court pointed out, there was no evidence that Sarmiento–Morales would have enabled him to do so by pleading guilty too, or that the government would have unwired the plea. The court asked the parties to be sure to address in their post-hearing briefs whether Benitez had shown he was prejudiced by his attorney's failure to inform him of the plea offer, as required by *Strickland v. Washington*,[3] without such evidence.

In its post-hearing submission, the government did not argue that the wired character of its plea offer defeated Benitez's ineffective assistance claim. Instead, the government simply urged the court to credit McEachern's testimony that he properly advised Benitez of the plea offer, or in the alternative to find that Benitez would not have accepted the offer in any event. In contrast, Benitez did address the issue the court had raised. Benitez argued that the prejudice prong of *Strickland* did not require him to show anything more than a reasonable probability that he would have accepted the plea offer had his attorney properly advised him of it. It would be unfair and inappropriate, Benitez argued, to demand that he also prove what his co-defendant or the prosecutor would have done, as such proof could never amount to anything other than "a black hole of speculation." Benitez noted that some federal courts had rejected a comparable requirement, that a defendant demonstrate a reasonable probability the trial court would have approved the plea agreement, as "an unworkable standard" that would be "inconsistent with Supreme Court precedent."[4]

In a memorandum opinion and order, the court denied Benitez's motion for post-conviction relief. It credited Benitez's testimony and found that McEachern failed to inform him of the government's plea offer or explain the possible sentencing implications of a guilty plea.[5] That omission, the court held, constituted deficient performance under *Strickland*. The court also found that Benitez would have opted to take the government's plea offer had his counsel properly explained it to him. Nonetheless, the court concluded, Benitez did not show he could have entered into the proposed plea agreement, because he presented no evidence that his co-defendant also would have been willing to plead guilty or that the government would have unwired its offer. Therefore, the court held, Benitez failed to demonstrate a reasonable probability that the outcome of his proceeding would have been different absent his counsel's deficiencies—the showing of prejudice required by *Strickland* for

---

3. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4. *Arnold v. Thaler*, 630 F.3d 367, 371 (5th Cir.2011) (citing cases). *Thaler* subsequently was vacated and remanded by the Supreme Court for further consideration in light of *Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), and *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). On remand, the Fifth Circuit understood *Frye* and *Lafler* to require the petitioner, "in order to show prejudice, to demonstrate a reasonable probability that the trial court would have approved the plea agreement." *Arnold v. Thaler*, 484 Fed.Appx. 978, 980 (5th Cir.2012). We discuss the sig-

nificance of *Frye* and *Lafler* for the present case below.

5. The judge observed that Benitez, who was born in El Salvador and required a Spanish interpreter, had virtually no formal education and a "limited ability to understand legal principles." In addition, the judge noted, McEachern had no independent recollection of a plea offer discussion with Benitez; there was no contemporaneous documentation in McEachern's file of any such discussion; McEachern did not speak Spanish and so could not have communicated directly with Benitez; and there was no evidence that a Spanish language interpreter was present for any discussion of the plea offer with Benitez.

an ineffective assistance claim to succeed. In support of this conclusion, the court cited the D.C. Circuit's decision in *United States v. Gaviria*.[6] The lead appellant in that case claimed that his trial counsel had caused him to pass up a favorable plea offer by giving him erroneous advice. Because the plea offer was wired to the offers made to his co-defendants, the D.C. Circuit held that "[f]or Gaviria to succeed on his ineffective-assistance claim ..., he must establish not only that he would have taken the plea offer if his lawyer had advised him correctly, but also either that each of his co-defendants would have accepted their respective plea offers, or that the Government would have offered Gaviria an unwired plea." [7]

## II.

Benitez argues that the trial court erred in three respects in concluding that he failed to show *Strickland* prejudice. We discuss each argument in turn.

## A.

■ Benitez argues, first, that the court erroneously required him to prove prejudice by a preponderance of the evidence rather than by a reasonable probability. There is a difference between those two standards of proof. A defendant must prove the "factual contentions" underlying his ineffectiveness claim by a preponderance of the evidence; [8] but to establish the requisite degree of prejudice, the facts so proved need only demonstrate "a reasonable probability that, but for counsel's un-

professional errors, the result of the proceeding would have been different." [9] Such a "reasonable probability is a probability sufficient to undermine confidence in the outcome" [10] and is "not the same as ... a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." [11]

We agree that there is some ambiguity on this score in the court's order. After correctly quoting the *Strickland* standard, the order states that

[a]lthough this Court has found the Defendant has met his burden in establishing the first prong of the *Strickland* two-part test by a preponderance of the evidence, he has failed to preponderate with respect to the second prong of *Strickland*, "that the defendant was so prejudiced by the errors that there is a reasonable probability" of a different outcome absent defense counsel's alleged deficiencies.

The order goes on to state that "the movant who has the burden of proof here by an evidentiary preponderance has not offered any evidence to support ... the prejudice prong of *Strickland*." These passages arguably raise a concern that the court conflated the preponderance of the evidence standard with the reasonable probability standard.

However, we need not resolve whether the court applied an incorrect standard or whether, "in context," the quoted passages are more "reasonably read" as referring simply to the "burden of proof with regard to factual contentions." [12] After re-

---

6. 116 F.3d 1498 (D.C.Cir.1997).

7. *Id.* at 1512.

8. *Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004).

9. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

10. *Id.*

11. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

12. *Holland*, 542 U.S. at 654, 124 S.Ct. 2736.

viewing "the totality of the evidence adduced at [the hearing]," [13] we conclude as a matter of law that Benitez did not present sufficient evidence to show a reasonable probability of a different outcome had his counsel properly advised him of the government's plea offer.[14] Before explaining this conclusion, we must first discuss what exactly Benitez was required to show in order to demonstrate prejudice.

### B.

■ Benitez argues that all he needed to show was a reasonable probability that he would have opted to take the plea offer had he been informed of it. He argues that the trial court erred in requiring him to show more just because the offer was conditioned on his co-defendant's acceptance as well—specifically, to show that Sarmiento–Morales probably would have agreed to plead guilty or that the government probably would have waived that precondition to allow Benitez to plead guilty by himself.[15] At the time of the hearing on Benitez's § 23–110 motion, there was some support in case law for his position (though the only case directly on point, *Gaviria* from the D.C. Circuit, supported the trial court's ruling). But Benitez's argument now is foreclosed by the recent decisions of the Supreme Court in *Missouri v. Frye*[16] and *Lafler v. Cooper.*[17]

Those decisions make clear that the trial court correctly identified what Benitez needed to show to demonstrate *Strickland* prejudice.

■ Of the two cases, *Frye* is the one more directly on point because, like the instant case, it involved a defense attorney who failed to inform his client of a plea offer, whereas *Lafler* involved an attorney who incompetently advised his client to reject an offer of which he was informed. "[A]s a general rule," the Court held in *Frye,* "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." [18] If "defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the Constitution requires." [19] To show prejudice "where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the ... plea offer had they been afforded effective assistance of counsel." [20] But that is not enough to establish *Strickland* prejudice: "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution can-

13. *Cosio v. United States,* 927 A.2d 1106, 1132 (D.C.2007) (en banc).

14. Both the deficient performance and prejudice components of the ineffectiveness inquiry involve mixed questions of law and fact, which means we accept a trial court's factual findings unless they lack evidentiary support, but we review its legal determinations *de novo. Id.* at 1123.

15. We use the word "probably" as shorthand for *Strickland's* "reasonable probability" standard, recognizing that in this context it does not mean "more likely than not." *See Holland,* 542 U.S. at 655, 124 S.Ct. 2736 ("We

have held that such use of the unadorned word 'probably' is permissible shorthand when the complete *Strickland* standard is elsewhere recited.").

16. —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

17. —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

18. 132 S.Ct. at 1408.

19. *Id.*

20. *Id.* at 1409.

celing it or the trial court refusing to accept it, if they had the authority to exercise that discretion" under applicable law.[21] Additionally, defendants must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." [22]

It follows from *Frye* (and *Lafler*) that Benitez had to show more than that he would have chosen to accept the government's plea offer. An express condition of the offer was that Benitez could take advantage of it only if his co-defendant also agreed to it. If his co-defendant did not agree, the government had the right to cancel the offer. Thus, to establish prejudice, Benitez had to show a reasonable probability that either the government would have waived that condition or his co-defendant would have been willing to plead guilty on the government's terms.[23] This corresponds to what the D.C. Circuit held in *Gaviria*, and it is noteworthy that *Lafler* cited *Gaviria* with approval.[24]

That Benitez might have been unable to make such a showing in his particular case does not mean it was unfair to require him to do so in order to demonstrate he was prejudiced. As a general proposition, whether the government probably would have unwired a plea offer is not unsusceptible to proof. For example, in *Gaviria*, the probability that the government would have unwired the plea offer was evidenced by the prosecutor's acceptance of an unwired plea from a co-defendant and by the government's expressed willingness to entertain counter offers from individual defendants.[25] Similarly, a co-defendant's willingness to accept a wired plea offer may be shown by evidence that, through his counsel or otherwise, he explored doing so with the prosecutor or other defendants' counsel. Conversely, the government's expressed refusal to unwire a co-defendant's plea offer or a co-defendant's lack of any demonstrated interest in a plea would be evidence cutting the other way.[26]

**21.** *Id.; see also id.* at 1410 (reiterating that "[i]n order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented").

**22.** *Id.* at 1409. *See also Lafler*, 132 S.Ct. at 1385 (holding that where a defendant rejected a plea offer based on counsel's incompetent advice, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").

**23.** Benitez also had to show a reasonable probability that he would have been better off had he pleaded guilty on the government's terms. He carried that burden; it is undisputed that Benitez's likely sentence after such a guilty plea would have been substantially lower than the eleven years in prison to which he was sentenced after he went to trial. *See supra* note 1.

**24.** 132 S.Ct. at 1385.

**25.** 116 F.3d at 1513.

**26.** Even absent case-specific evidence, the *Frye* Court considered it feasible in most cases to assess the likelihood that a defendant would have been able to take advantage of a plea offer. As the Court explained:

It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would

## C.

■ In the evidentiary hearing on his motion, Benitez made no effort to prove that Sarmiento–Morales would have joined him in accepting the government's plea offer (presumably because the issue did not surface until the court raised it at the conclusion of the hearing). On appeal, however, Benitez argues that the evidence showed that Sarmiento–Morales probably would have taken the offer had he known he could do so, and that the court erred in concluding otherwise. The gist of Benitez's argument is that the government's plea offer was so attractive that—for that reason alone—it is reasonably probable Sarmiento–Morales would have accepted it once the only condition preventing him from doing so (the condition that his co-defendant had to accept it as well) was satisfied. In evaluating this argument, we shall assume that the offer was attractive for the reasons Benitez cites: the prosecution case was a strong one; the government offered to dismiss all but one of the charges; and, most importantly, pleading guilty on the government's terms would have been likely to reduce Sarmiento–Morales's sentencing exposure significantly.[27]

Even so, Benitez's argument is unpersuasive. What is most striking is that the record is devoid of any indication that Sarmiento–Morales or his attorney had any interest whatsoever in accepting the government's plea offer or in pleading guilty on any terms. There is no suggestion that Sarmiento–Morales was unaware of the plea offer. One would expect that if he was interested in taking it but was stymied by the condition that Benitez plead guilty too, his attorney would have inquired about the possibility of overcoming that impediment. Yet there is no evidence that Sarmiento–Morales's attorney made any overture to Benitez's attorney or to the prosecutor to enable Sarmiento–Morales to take the government's offer. There likewise is no evidence that Sarmiento–Morales ever spoke with Benitez personally about pleading guilty. And when the prosecutor stated on the record that the defendants had rejected the plea offer, Sarmiento–Morales and his counsel did not disagree; nor did they complain about the condition that precluded them from reaching a deal. It is entirely possible that Sarmiento–Morales and his attorney liked their chances at trial and preferred to "roll the dice" rather than plead guilty, or that they assessed the government's offer as insufficient.[28]

suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.
132 S.Ct. at 1410.

27. In point of fact, though, because the record does not contain information about Sarmiento–Morales's criminal history, we do not know what sentencing guideline range for first-degree burglary applied in his case. We therefore cannot gauge how much the government's promise to allocute for a sentence at the bottom of the range would have been worth to Sarmiento–Morales. And, of course, the government could not guarantee that the court would follow its recommendation (or even that it would adhere to the sentencing guidelines, which are purely voluntary). On the other hand, we do know that Sarmiento–Morales was sentenced to 96 months of incarceration, a shorter period of imprisonment than Benitez was given. Arguably, Sarmiento–Morales was less culpable than Benitez. For all these reasons, among others, it is by no means clear on the existing record that Sarmiento–Morales was or perceived himself to be facing as large a disparity as Benitez posits between the likely sentence after a potential conviction and the likely sentence after a guilty plea to first-degree burglary on the government's terms.

28. Perhaps Benitez's implicit assumption is that he would have been able to persuade his co-defendant to join him in pleading guilty. On the existing record, however, that would be pure speculation.

■ We do not doubt that the objective attractiveness of a wired plea offer is relevant in gauging the likelihood a defendant would have taken it had he been afforded the chance. Common experience tells us, however, that defendants often reject favorable plea offers, even when their attorneys urge acceptance strenuously. It is true that most criminal cases do end in guilty pleas.[29] But that does not mean there is *always* at least a reasonable probability that *any* defendant would have accepted a favorable plea offer if he could have done so. Where, as here, a defendant manifested no interest in a favorable plea offer and there are no circumstances affirmatively indicating that he would have been willing to plead guilty, and he in fact went to trial, the truism that most defendants plead guilty has little force. Thus, we think the attractiveness of a wired plea offer will rarely, if ever, be enough by itself to demonstrate a reasonable probability that a defendant would have taken it had he been able to do so. It is not enough here. Sarmiento–Morales's inaction speaks louder than the offer's words.

### III.

■ A somewhat peculiar feature of this case is that the government never argued in the proceedings below that Benitez suffered no prejudice because the wired nature of the plea offer was an obstacle he could not have overcome. The government refrained from making this argument even after the court invited it to do so at the conclusion of the evidentiary hearing. Instead, the government rested on its arguments that Benitez's attorney properly advised him of the plea offer and that Benitez would not have accepted the offer in any event—arguments the court rejected.

Because the government did not rely on the wired nature of the plea in opposing his § 23–110 motion, and because the "wired plea" problem was raised for the first time after the court declared the evidentiary record closed, Benitez claims he was blindsided by the court's rationale for denying him relief. Anticipating that we might affirm the soundness of the court's legal reasoning (as we do), Benitez therefore asks us in that event to consider remanding the case for a further evidentiary hearing, at which he would have a chance to present whatever evidence he can muster to show either that the government would have unwired its plea offer to him or that Sarmiento–Morales would have been willing to accept the offer and plead guilty with him.

We think it appropriate to grant Benitez's request for a remand. Notwithstanding the D.C. Circuit's decision in *Gaviria*, it is understandable that Benitez did not seek to marshal evidence to meet an argument the government never made—particularly since it was uncertain prior to *Frye* and *Lafler* what a defendant in Benitez's shoes needed to show in order to demonstrate *Strickland* prejudice.[30]

Therefore, to afford Benitez a full opportunity to show that the outcome of his criminal prosecution was adversely affected by his counsel's deficient performance and to give the trial court the opportunity

29. In *Frye*, the Supreme Court took note of the "simple reality" that, according to Department of Justice statistics, "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the results of guilty pleas." 132 S.Ct. at 1407.

30. *Cf. Metts v. United States*, 877 A.2d 113, 124 (D.C.2005) (rejecting ineffectiveness claim predicated on counsel's failure to communicate a plea offer where the defendant never claimed that he would have accepted the offer, and hinting that, in any case, *Strickland* prejudice could not be established if the trial court would have refused to accept the plea due to the defendant's refusal to admit guilt).

to consider all the available evidence on the issue, we choose to remand the case for further evidentiary proceedings.[31] In those proceedings, the parties and the court may address the question of *Strickland* prejudice in accordance with the standard set forth in this opinion.

*So ordered.*

In re D.S.; J.M., Appellant,

In re K.M.; J.M., Appellant,

In re B.S.; J.M., Appellant,

In re R.S.; J.M., Appellant,

In re T.S.; J.M., Appellant,

In re P.S.; J.M., Appellant.

Nos. 10–FS–1556, 10–FS–1157, 10–FS–1558, 10–FS–1559, 10–FS–1560, 10–FS–1561.

District of Columbia Court of Appeals.

Feb. 21, 2013.

BEFORE: Washington, Chief Judge; Glickman, Fisher, Blackburne–Rigsby *, Thompson, Oberly, Beckwith *, Easterly and McLeese, Associate Judges; Ferren*, Senior Judge.

---

**31.** *See* D.C.Code § 17–306 (2001) (authorizing remand for "such further proceedings ... as is just in the circumstances").