*600 VIVIANO, J.

(concurring in part and dissenting in part).

I agree with the majority and the Court of Appeals that a new trial is warranted.[1] I also agree with the majority and the Court of Appeals that defense counsel provided ineffective assistance of counsel during the pretrial stage. However, I write separately because I do not agree with the portion of Part IV of the majority opinion in which the majority concludes that defendant was not prejudiced as a result of defense counsel’s ineffective assistance of counsel during the pretrial stage and thus is not entitled to reinstatement of the prosecution’s plea offer. Instead, I would hold that defendant has established that he was prejudiced and thus is entitled to have the prosecution’s first plea offer reinstated.
I. “PREJUDICE” UNDER LAFLER
To prevail on his Lafler[2] claim, “defendant must show that but for the ineffective advice of counsel there is a reasonable probability” that:
1) the plea offer would have been presented to the court, i.e.,
(a) the defendant would have accepted the plea, and
*601 (b) the prosecution would not have withdrawn it in light of intervening circumstances;
(2) the court would have accepted its terms, and
(3) the conviction or sentence, or both, under the offer’s terms would have been less severe than the punishment ultimately faced.
A. PREJUDICE COMPONENT la: WOULD DEFENDANT HAVE ACCEPTED THE PLEA OFFER?
The majority defers to the trial court’s finding that the failure to advise defendant about the mandatory minimum would not have changed the outcome of defendant’s decision. In the majority’s view, the “full body” of defendant’s testimony at the posttrial Ginther hearing undermines the credibility of defendant’s claim that misinformation regarding the sentence he faced upon conviction “meaningfully influenced his decision to reject the prosecution’s plea offer.”[3]
I disagree. On direct examination at the Ginther hearing, counsel recognized that defendant had consistently maintained his innocence and rejected plea offers before trial, so counsel asked defendant, “How could you enter a guilty plea to an offense if you maintained your innocence?” Defendant responded unequivocally: “Like I said, the only way that I would’ve really done it is if I would’ve known that I was facing that 25-year minimum.” In case this statement was not already clear enough, counsel then asked “Are you saying that if you had known you were looking at 25 years, you would have entered a plea?” To which defendant replied, “Yes.”
It is true that, on cross-examination, the prosecutor asked, “Okay, so there is no plea bargain you could have *602 been offered that would’ve required you to be on the sex offender registry that you would have accepted; is that true?” Defendant responded, “Correct.” But if read in context, it becomes clear that what defendant was saying was that, without knowing that he was facing a 25-year mandatory minimum sentence, he would not have accepted any plea that would have required him to register as a sex offender. As a follow-up to the above question, the prosecutor asked, “But now you’re telling this Court that you . . . would’ve taken a plea bargain because you wouldn’t want to go to prison for 25 years, but you rejected one, in fact two, knowing that you could go to prison for 20 years; is that true?” Defendant replied, “Correct, and the reason was because I wasn’t told that that would be the minimum of 20 years.” Hence, defendant consistently maintained that he would have responded differently to the prosecution’s offers if he had known about the mandatory minimum sentence he was facing.
In addition to mischaracterizing defendant’s post-trial testimony, I believe the majority gives too little weight to the magnitude of defense counsel’s error. Suppose a defense attorney mistakenly told a client that, if she went to trial, she would be risking a 20-year maximum sentence upon conviction, when in fact the maximum sentence was 21 years in prison. In that case, the attorney would clearly have performed deficiently by giving the client false legal information, but the false information would have been fairly close to the truth. In such a case, defense counsel’s advice would have been so close to being accurate that it is hard to imagine that counsel’s slight error would have made a difference in the plea-bargaining process.
But as the magnitude of a defense attorney’s error grows, it seems more and more likely that the outcome of *603 the plea-bargaining process would have been different absent counsel’s mistake, no matter how a defendant actually behaved on the basis of constitutionally deficient advice. In other words, the predictive value of a defendant’s pretrial behavior decreases as the significance of a defense attorney’s error increases. Consider a case in which a defense attorney told a client that she was facing a 2-year maximum term, when in fact the statutory maximum term was life in prison without the possibility of parole. The error there would be so great that the error itself would seem to create a reasonable probability that the outcome of the trial process would have been different, even if the defendant steadfastly maintained her innocence before trial. Big differences in information are more likely to generate big changes in behavior.
In this case, defendant’s attorney did not make a small error. The applicable sentencing statute clearly states that defendant’s offense was punishable “by imprisonment for life or any term of years, but not less than 25 years.”[4] Yet, defense counsel missed this information. The result was that, on the morning of trial, defendant rejected the prosecution’s final plea offer of one count of CSC-IV on the belief that he could receive a sentence of five to eight years in prison if the jury convicted him, or 20 years’ imprisonment in the worst-case scenario. In reality, the best possible sentence he could hope for upon conviction was five years more than his perceived worst-case scenario. Likewise, his actual worst-case scenario (i.e., the statutory maximum) was not 20 years, but life in prison. Thus, defense counsel’s error was significant.
The trial court minimized this error by noting that there was only a 5-year gap between the 20-year maximum that defendant mistakenly thought he was facing *604 and the actual 25-year minimum he was facing. But comparing those two numbers is like comparing apples and oranges. It makes more sense to compare the mistaken maximum (20 years) and the actual maximum (life), and to compare the mistaken estimated sentence (5 to 8 years) with the actual minimum sentence that defendant was facing (at least 25 years). These comparisons more vividly show the significance of defense counsel’s error.
The question becomes whether, in view of the magnitude of defense counsel’s error and defendant’s conduct and testimony, the trial court clearly erred when it determined that there was no “reasonable probability” that defendant would have accepted one of the prosecution’s plea offers. “Reasonable probability” is a term of art in the domain of criminal procedure. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”[5] In the context of trial error, a showing of “reasonable probability” does not require a defendant to show that “the defendant would more likely than not have received a different verdict[.]”[6] Instead, the question is whether, absent error, a defendant “received a fair trial, understood as a trial resulting in a verdict worthy of confidence.”[7] Similarly, in the context of a Lafler claim, I do not believe a defendant must show that it is more likely than not that he or she would have accepted an offer absent the errors of defense counsel. Instead, I believe that a defendant must produce evidence sufficient to undermine a reviewing court’s confidence that the defendant would have rejected a plea offer.
*605 In this case, I believe the trial court clearly erred by finding there was no “reasonable probability” that defendant would have accepted one of the prosecution’s plea offers. Even the most stubborn defendant would at least consider pleading guilty upon learning that he was about to stand trial on a charge for which the statutory minimum sentence was 25 years in prison. This is especially true where, as here, defense counsel informed defendant that his likely sentence upon conviction would be only 5 to 8 years, approximately one-fifth of the minimum term required by statute. This is an error so significant that I believe defendant’s actual pretrial behavior has marginal predictive value.[8] In view of these facts as well as defendant’s testimony at the posttrial Ginther hearing, I am left with the “definite *606 and firm conviction” that the trial court made a mistake by concluding, “In the face of a plea of innocence, it makes no difference [what advice defendant received].” Instead, I believe defendant has met his burden of producing evidence sufficient to undermine a reviewing court’s confidence that he would have rejected the prosecution’s offers even if his attorney had provided reasonable advice. Therefore, I believe he has established the first component of the prejudice prong under Lafler.
B. PREJUDICE COMPONENT lb: WOULD THE PROSECUTION HAVE WITHDRAWN THE OFFER IN LIGHT OF INTERVENING CIRCUMSTANCES?
The prosecution made its first offer — a plea to attempted CSC, which is a felony carrying a 5-year maximum term of imprisonment — before defendant’s preliminary examination. Defendant rejected the offer. After the preliminary examination, the prosecution presented defendant with an even more favorable offer on the morning of trial — a plea to one count of CSC-I\[ which is a statutory misdemeanor with a maximum term of two years in prison. Therefore, the intervening circumstances between the prosecution’s initial offer and the beginning of trial in this case suggest that the prosecution only grew more willing to accept defendant’s plea and avoid trial. In other words, the intervening circumstances decreased the likelihood that the prosecution would have withdrawn its offer.
C. PREJUDICE COMPONENT 2: WOULD THE COURT HAVE ACCEPTED THE TERMS OF THE PLEA OFFER?
The second component of Lafler’s prejudice prong concerns whether the court would have accepted the terms of the plea deal. Looking at the events that transpired before trial, I can find nothing to suggest *607 that the trial court would have rejected a guilty plea by defendant if he had offered one. Hence, I believe defendant has established that the court would have accepted his plea if it had been offered.
D. PREJUDICE COMPONENT 3: WOULD THE CONVICTION OR SENTENCE HAVE BEEN LESS SEVERE THAN THE PUNISHMENT ULTIMATELY FACED?
As the majority notes, the prosecution made two plea offers: “[T]he first, made before the preliminary examination, was for the defendant to plead guilty to attempted CSC, carrying a five-year maximum penalty; the second, made just before trial, was for the defendant to plead guilty to CSC-IAJ carrying a two-year maximum penalty.”[9] Defendant was actually convicted of CSC-I, which carries a 25-year minimum sentence and a maximum penalty of life in prison.[10] He was eventually sentenced to a minimum term of 25 years. Thus, both offers would obviously have resulted in convictions and prison terms that were less severe.
II. REMEDY UNDER LAFLER
In Lafler, the Supreme Court did not articulate a bright-line rule regarding how to remedy an instance of ineffective assistance during the plea-bargaining process. Instead, it explained:
In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge’s sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice.... In these circumstances, *608 the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.[11]
This paragraph suggests that when, as in this case, a mandatory minimum sentence confined the trial court’s discretion after conviction, the appropriate role for an appellate court in providing a Lafler remedy is not to dictate a specific conviction outcome. Instead, a reviewing court should aim, as closely as possible, to restore the parties to the same position they were in before the plea-bargaining process was corrupted by defense counsel’s ineffective assistance. This is no easy task, for as the Supreme Court stated in Lafler, “The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy . .. .”[12]
With reference to that prerejection baseline, I would remand this case to the trial court and order the prosecution to reoffer its first offer, one count of attempted CSC, to defendant. This would restore the parties as much as possible to the position they were in before any ineffective assistance on the part of counsel.[13]
*609 To be clear, I would not order the trial court to accept defendant’s plea if defendant were to accept the prosecution’s offer. Just as in Lafler, I would leave “open to the trial court how best to exercise [its] discretion in all the circumstances of the case.”[14]
III. CONCLUSION
Again, I agree with the majority that defendant is entitled to a new trial and that his attorney’s pretrial advice was constitutionally deficient. However, I would hold that defendant has shown that he was prejudiced by his attorney’s deficient counsel, and I would order the prosecution to reinstate its first plea offer in order to remedy this constitutional violation.
CAVANAGH and MARKMAN, JJ., concurred with VMANO, J.

 However, unlike the majority, I agree with the Court of Appeals that defense counsel was ineffective for failing to impeach KD at trial with her testimony from the preliminary examination. At the preliminary examination, KD testified that her mouth never touched defendant’s penis, that her mother “wanted [her] to tell you people [she] sucked it” and that “milk” came out of it, and that her mother wanted her to “tell a lie that [she] didn’t know anything about.” Given that defense counsel’s “trial strategy was to demonstrate that KD was not believable, that her testimony had been tainted by [her mother], and that she had told different stories to different people throughout the investigative process,” ante at 586,1 simply cannot agree with the majority that counsel’s failure to offer this impeachment evidence did not fall below an objective standard of reasonableness.

 Lafler v Cooper, 566 US_; 132 S Ct 1376, 1385; 182 L Ed 2d 398 (2012).

 Ante at 597.

 MCL 750.520b(2)(b).

 Strickland v Washington, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

 Kyles v Whitley, 514 US 419, 434; 115 S Ct 1555; 131 L Ed 2d 490 (1995).

 Id.

 I agree with the majority that the court must consider “the effect of counsel’s error on this particular defendant, not some hypothetical one.” Ante at 598. I disagree, however, that this can be accomplished without resort to hypotheticals. Predicting human behavior has long been the province of psychologists and philosophers; only more recently, in cases like this one, have courts undertaken the task of determining what a person would have done under a hypothetical set of facts — in this case, the trial court had to determine what the defendant would have done had he known he was actually facing a 25-year minimum sentence. This requires, at best, an informed prediction, and at worst “retrospective crystal-ball gazing posing as legal analysis.” Missouri v Frye,_US_; 132 S Ct 1399, 1413; 182 L Ed 2d 379 (2012) (Scalia, J„ dissenting). Unlike most work done by trial judges, this inquiry did not require the judge to make factual findings about something that happened in the past. Rather, the trial judge had to answer a hypothetical question— something that courts are not particularly well-suited to do.
It is precisely because of the counterfactual nature of the inquiry that the magnitude of the error should be given more prominence in the analysis. When beginning the difficult task of predicting human behavior, it is important that a trial court consider how drastically the actual pretrial history in a case varies from the hypothetical scenario that the court is considering. Otherwise, the court will risk compounding the errors of a constitutionally deficient attorney by holding his or her client accountable for how the client behaved on the basis of erroneous legal advice.

 Ante at 591.

 MCL 750.520b(2)(b).

 Lafler, 566 US at_; 132 S Ct at 1389 (emphasis added; citations omitted).

 Id. at_; 132 S Ct at 1389 (emphasis added). The quoted sentence ends with the phrase “that does not require the prosecution to incur the expense of conducting a new trial.” In Lafler, the defendant received a constitutionally fair trial, so the Court was able to let his conviction stand. In this case, however, defendant did not receive a fair trial, so this Court cannot order a remedy that preserves defendant’s trial conviction.

 This remedy is also consistent with this Court’s disposition of People v McCauley, 493 Mich 872 (2012). In that case, this Court ordered the prosecution to reinstate a plea offer despite the defendant’s trial testimony that he was innocent.

 Lafler, 566 US at_; 132 S Ct at 1391.