NOT DESIGNATED FOR PUBLICATION

No. 119,096

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LARRY D. WOOD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed May 8, 2020.
Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Larry D. Wood appeals his rape conviction and sentence. He
contends that his trial counsel was ineffective for failing to communicate the State's plea
offer to plead guilty as charged to the crime of aggravated incest to avoid being charged
and convicted of the more serious crime of rape. Finding no error in the district court's
ruling that Wood's trial counsel did, in fact, communicate the State's plea offer to Wood
and, therefore, did not provide ineffective assistance of counsel, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2016, the State charged Wood with aggravated incest in violation of K.S.A. 2015 Supp. 21-5604(b)(2)(A), a severity level 5 offense. The charge was filed after Wood's 16-year-old stepdaughter reported that in August 2015 Wood had forcibly engaged in sexual intercourse with her at the home without her consent. The sexual assault was promptly reported, and a sexual assault examination of the stepdaughter confirmed the presence of sperm cells consistent with Wood's DNA.

Kenneth R. Newton was appointed to represent Wood. Monika Hoyt represented the State. After Wood waived the preliminary hearing on the charge of aggravated incest, Hoyt filed an amended complaint substituting a charge of rape in violation of K.S.A. 2015 Supp. 21-5503(a)(1)(A), a severity level 1 offense, instead of the lesser charge of aggravated incest. Wood declined to waive the preliminary hearing on the more serious charge, and he was bound over for arraignment and trial.

Newly appointed counsel represented Wood at trial. A jury found Wood guilty of rape and he was sentenced to 186 months in prison. Wood filed a timely notice of appeal but soon after he filed a motion to dismiss the rape conviction in district court. In the motion he alleged that Newton provided ineffective assistance of counsel and that the complaint was illegally amended.

We remanded the case to the district court to hold a hearing in compliance with *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). The purpose of the hearing was for the district court to determine whether Newton was ineffective for failing to communicate a plea offer to Wood. As detailed below, prior to trial there were conversations between Newton and Hoyt regarding plea negotiations. The nature of those conversations and whether they were communicated by Newton to Wood form the crux of this appeal.

The following facts are summarized from testimony by Hoyt, Newton, and Woods at the *Van Cleave* hearing.

Wood was charged with aggravated incest on May 12, 2016.The district court set the preliminary hearing for May 26, 2016, but it was continued until July 14, 2016. Hoyt testified that she presented the plea offer to Newton on May 26, 2016. Hoyt recalled:

> "I had made the decision that the defendant would be able to take advantage of what I considered to be undercharging of the incident. And so my conversation with Mr. Newton was that the defendant would have the opportunity to either plead guilty as charged, understanding the State would seek prison. The defendant would be free to argue for whatever disposition he felt would be appropriate. And the plea would need to be entered before any preliminary hearing was had—not before preliminary hearing was had, but at the preliminary hearing stage.
> "I advised Mr. Newton that I would not be waiving the State's right to a preliminary hearing, and that if I put on evidence, I intended to ask the Court to amend the charge to a level 1 rape. And so, also, I believe I advised Mr. Newton that there was a time frame over the summer in which the victim would be available in Kansas to testify. She was at that point living out of state, I believe, with her biological father. And so there was going to be a window of opportunity in which I would be able to present that evidence for a preliminary hearing and that decision would need to be made before she left the State of Kansas."

Newton did not consider Hoyt's statements to be an express plea offer. Rather, he understood Hoyt's statements as a threat that if Wood did not waive his preliminary hearing, the State would amend the complaint to charge the more serious crime of rape. On the other hand, if Wood waived the preliminary hearing, Hoyt would not amend the complaint. Newton testified that he told Wood about the State's "threat" and informed him of the possible penalty he faced on the aggravated incest charge.

3

For his part, Wood confirmed that he had this conversation with Newton. However, Wood understood Newton's comments to mean that if he waived the preliminary hearing, the State could not legally amend the aggravated incest charge to a more serious charge of rape and that any amendment would be to a less serious charge. On July 14, 2016, Wood waived his preliminary hearing based on his conversation with Newton.

Hoyt was surprised that Wood waived his preliminary hearing and she interpreted this waiver as a rejection of the plea offer. Hoyt filed an amended complaint charging rape on July 20, 2016.

Sometime during the week following Wood's waiver on the aggravated incest charge, Hoyt and Newton had a conversation. As a result of this discussion, Hoyt and Newton realized there had been a misunderstanding between the two attorneys about resolving the case. Because of the confusion between the two attorneys, however, she advised Newton that her original plea offer—for Wood to plead guilty to aggravated incest—would remain open and available to be accepted until she put on evidence at the preliminary hearing for the rape charge on August 11, 2016.

On the morning of the preliminary hearing for the rape charge, Hoyt and Newton again discussed the plea offer. Hoyt recalled that she stepped out of the courtroom so the two men could discuss the plea offer and that they were in discussions for about an hour and a half. Hoyt recalled that at the beginning of the preliminary hearing, Newton did not expressly reject the plea, but he "came back and discussed that his client wanted a hearing" and the preliminary hearing commenced.

Although Newton could not recall whether his conversation with Wood took place at his office or in the courtroom, he testified in detail about it:

4

"Q. [Prosecutor] What conversation did you have?

"A. The conversation was that the State was going to go forward with the higher charge, you know, unless he wanted to plead to the aggravated incest. And I believe at that point I had talked to Monika because of the confusion between the communications that we had, that the aggravated incest would still be a possibility to plead to at that point.

"Q. Okay. And did you convey that to Mr. Wood?

"A. I did.

"Q. What was Mr. Wood's response to that entire situation, where it appeared that you were wrong about what the State had intended to do?

"A. Well, we had had numerous conversations before that regarding his possible defenses towards the aggravated incest charge. And at that point, he believed that it was not a valid charge against him, and that if we ultimately could go to trial, we felt very positive that we could probably beat that charge.

. . . .

"Q. Were they engaged in a common-law marriage; is that accurate to say?

"A. That would have been ultimately the issue at trial, yes.

"Q. Was there a certain—did Mr. Wood want to enter a plea or seek a plea?

"A. To the aggravated incest, no.

"Q. To any charge?

"A. At that point, no."

Newton further testified that he explained the severity level of the rape charge and the possible penalties to Wood. Newton testified that he "[a]bsolutely" explained to Wood that he would receive a significantly higher sentence if he was convicted of rape than if he was convicted of the aggravated incest charge. Newton recalled that Wood did not react well to the State's amending of the charge:

"[O]bviously, he didn't want it to happen. But at the same time, he did make some conversation about the fact that the victim was, like, in North Carolina or something like that, and wasn't going to be back for the preliminary hearing anyway, so it really didn't matter what they charged him with, or something to that effect."

Newton informed Wood that his stepdaughter was in the courthouse that day and she would be testifying at the preliminary hearing. Newton also explained to Wood that the State obtained DNA evidence proving that sexual relations had occurred between him and his stepdaughter. Newton recalled that Wood insisted the sexual intercourse was consensual and that this was a valid defense for the rape charge. According to Newton, Wood declined the plea offer and refused to accept "any type of a plea at that point."

Conversely, Wood testified that Newton did not inform him of the State's plea offer at any time. He stated that Newton never told him that if he did not plead guilty to the aggravated incest charge that the State would file a rape charge. Wood testified that Newton informed him of the possible penalties for the aggravated incest charge, but he did not discuss the possible penalties for a rape conviction. Wood testified that he first found out about the rape charge a few days prior to the second preliminary hearing and he immediately moved to dismiss Newton as his counsel because he felt Newton had lied to him. Wood stated that he did not learn of the plea offer until Hoyt made statements during the preliminary hearing. Wood admitted that he spoke with Newton before the preliminary hearing on the rape charge but denied that they discussed a plea offer.

The district judge ruled from the bench:

"The argument is made that an individual, specifically Mr. Wood, would have pled to a severity level 5 if he knew he could because the sentence that he received is significantly higher than the one he would have received with a severity level 5 offense. The defendants don't always act in their best interest. The defendants don't always listen to defense counsel and a court of appeals should not label or labor under the impression that defendants always act in a rational, reasoning manner when it addresses their cases. It has been testified to that Mr. Wood thought he had, in fact, he said himself, he thought he had a defense to the aggravated incest charge. I presided over the trial, saw how the victim testified too, which Mr. Wood would have been aware of her condition and, in

fact, he references that, her condition and how she behaves in his statements to law enforcement that were part of the evidence presented at trial.

"What this basically comes down to is that Mr. Newton says that I did communicate the plea offer to my client. Mr. Wood says he did not. *I find Mr. Newton to be more credible than Mr. Wood.* I'm not persuaded that it doesn't make sense for Mr. Wood to go forward for the reasons that I've already stated. *I do believe based upon what Mr. Newton testified to that this plea offer was communicated to him and Mr. Wood rejected that plea offer and decided to go forward on a rape charge.* Now in hindsight that doesn't make much sense, I would agree. But, again, defendants don't always act in a—the way they should and I can't view this case based on what maybe Mr. Wood should have done in hindsight.

"So I find that the initial thing that I would have to find is that the plea offer was not communicated to Mr. Wood and I'll find that it was. And since the plea offer was communicated to Mr. Wood and I don't think there is any further analysis necessary for the Court." (Emphases added.)

After considering the evidence, the district court ruled that Newton did communicate the plea offer to Wood and, therefore, Newton did not provide ineffective assistance of counsel.

The case returns to us for consideration of Wood's appeal.

ANALYSIS

On appeal, Wood contends the district court erred in finding at the conclusion of the *Van Cleave* hearing that Newton communicated a plea offer to him. Defense counsel's responsibility to communicate a formal plea offer to a client is a matter of constitutional importance. In *Missouri v. Frye*, 566 U.S. 134, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), the United States Supreme Court held that a defense counsel's failure to communicate a formal plea offer to the defendant falls below an objective standard of reasonableness. 566 U.S. at 145.

7

Our standard of review provides that when the district court conducts an evidentiary hearing on a claim of ineffective assistance of counsel, the appellate courts review the district court's factual findings using a substantial competent evidence standard. Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). In the context of communicating a plea offer, prejudice means "the defendant must show a reasonable probability that the defendant would have accepted the plea offer, the plea would have been entered, and the result would have been more favorable to the defendant." *Blaurock v. State*, No. 120,858, 2019 WL 7207548, at *6 (Kan. App. 2019) (unpublished opinion) (citing *Frye*, 566 U.S. at 147).

Of note, judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

On appeal, Wood argues that Newton's testimony is not credible because he was inconsistent in recalling details of his conversations with Wood, such as where the conversations took place and how many times they met. The district court acknowledged

this in its ruling. Still, the district judge relied on Newton's testimony that he explained the offer to Wood:

> "The argument is, well, Mr. Newton did suffer from some memory lapses as to where—whether or not Mr. Wood came in to see him, which I agree with [defense counsel] at the time he would have been in custody. But Mr. Newton did testify he did communicate this offer to Mr. Wood about pleading to a severity level 5. And, in fact, at the August 11th, 2016, hearing before Judge Brown, Ms. Hoyt reiterated that offer before the victim testified. Said that would be the offer, the offer was open until the victim testified."

Despite some inconsistencies in details, both Hoyt's and Newton's testimony establish that the State and defense counsel had a misunderstanding about the initial plea negotiations. Newton did not believe that there was an offer at first, but he thought that waiving the preliminary hearing would allow him additional time to negotiate a resolution of the aggravated incest charge. Hoyt testified that it is very common for a defense attorney to waive a preliminary hearing to lock-in charges. Importantly, upon discovering the attorneys' misunderstanding, Hoyt renewed her prior offer for Wood to plead guilty to aggravated incest. Newton informed Wood of the renewed plea offer and the possible penalties for each charge. As found by the district court, Wood rebuffed the State's plea offer.

On appeal, Wood is essentially asking this court to reweigh the evidence and reassess Newton's credibility, which this court may not do. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018) The district court made an explicit finding that Newton's testimony was more credible than Wood's testimony. Because there is evidence in the record to show that Newton communicated the plea offer to Wood, there is substantial competent evidence to support the district court's ruling that Newton did not provide ineffective assistance of counsel.

On a related matter, Wood argues that even if Newton communicated the plea offer to him, he was ineffective in how he presented the offer. Wood contends Newton failed to advise him that accepting the plea would be in his best interest given the overwhelming amount of evidence against him. Wood argues that he could not have made a reasonable and informed decision based on his discussions with Newton. The State counters that Wood did not raise this issue below—the sole issue at the *Van Cleave* hearing was to determine whether Newton communicated the plea offer to Wood, not how it was communicated.

The record shows that Wood did not specifically raise this issue at the *Van Cleave* hearing. Wood's closing argument at the *Van Cleave* hearing only focused on whether Newton communicated the plea. During the argument, Wood's attorney mentioned that Newton did not counsel Wood to accept the favorable plea but did so only to show that Newton was not credible in testifying that he relayed the offer to Wood, not that he was ineffective in counseling Wood about the offer.

It is well known that issues not raised before the trial court generally may not be raised on appeal. See *Kelly*, 298 Kan. at 971. Still, as to the merits of this argument, our independent review of the record shows that Newton did provide the necessary information to Wood regarding the plea offer so that Wood could make an informed decision. Newton testified that he informed Wood of the favorable and unfavorable evidence against him. Newton and Wood discussed the possible defenses to both the aggravated incest and rape charges. Newton also informed Wood of the penalties for both crimes. Still, Wood stated that he would not plead to anything that he was not guilty of.

Wood also argues that Newton was ineffective because he informed Wood that the State could not legally amend the complaint to allege a more serious charge if Wood waived the preliminary hearing. Again, as the State points out, this argument was not raised directly below at the *Van Cleave* hearing. Although Wood mentioned the argument

10

in his motion for the *Van Cleave* hearing, he did not argue this point at the hearing or seek a ruling on it by the district court.

The record shows that Newton told Wood to "waive the [preliminary hearing] to avoid the possibility of them bumping the charge up to a rape, yes." This was part of the misunderstanding between Hoyt and Newton. Earlier in the proceedings, Newton told the district court that "[w]e decided that we would waive that, to *try* to preserve a favorable charge, to avoid it being bumped up. The State elected to bump it up anyway." (Emphasis added.)

We are persuaded that Newton did not inform Wood that it was legally impermissible for Hoyt to later file the rape charge. Rather, consistent with Newton's and Hoyt's testimony, Newton initially conveyed to Wood that his waiver of the preliminary hearing on the aggravated incest charge would leave open the possibility of avoiding Hoyt's substitution of the more serious charge in an amended complaint.

Finally, apart from the merits of Wood's ineffective assistance of counsel argument, Wood must show prejudice, i.e., "a reasonable probability that the defendant would have accepted the plea offer, the plea would have been entered, and the result would have been more favorable to the defendant." *Blaurock*, 2019 WL 7207548, at *6 (citing *Frye*, 566 U.S. at 147).

> "[U]nder *Lafler* [*v. Cooper*, 566 U.S. 156, 182, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)] and *Frye*, it is the defendant's burden to 'demonstrate a reasonable probability' that he would have accepted the plea offer at the time that it was made—not after he knew the outcome of his trial and direct appeal." *Stotts v. State*, No. 110,800, 2015 WL 1402815, at *8 (Kan. App. 2015) (unpublished opinion).

Although Wood's appellate brief cites the appropriate standard of review and legal authority of *Strickland* and *Frye*, the brief does not include a prejudice argument. As a

11

general rule, issues not adequately briefed are deemed waived and abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

Regardless, the record does not show that Wood met his burden to establish prejudice. The only evidence presented to show that prior to trial Wood would have pled guilty to aggravated incest was his postconviction testimony at the *Van Cleave* hearing. In particular, Wood testified he would have accepted the plea offer if it had been presented. But the testimony the district court found more credible was Newton's recollection that Wood was unwilling to plead guilty to either charge.

Moreover, although Wood also testified that he would have accepted a plea offer if he had he known that he could have received a 38-month sentence compared to the 186-month sentence he received, Newton testified that he informed Wood of the penalties for both crimes. And while Wood stated that his intent throughout the case was to find the best plea deal possible, he also testified that he intended to fight the charges because he believed he had a possible defense against both the aggravated incest and rape charges. Additionally, Newton testified that Wood did not want to plead to a crime that he did not commit. Under these circumstances, the district court acknowledged that, in Wood's view, it made sense to reject the plea offer and proceed to trial.

In summary, we conclude the district court's findings of fact were supported by substantial competent evidence. Upon our review, the district court's conclusion of law that Newton did not engage in ineffective assistance of counsel under the totality of the circumstances was not error, and no prejudice has been shown.

Affirmed.