NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————

No. 19-2972

——————

GERALD FUNK

Appellant

v.

SUPERINTENDENT SOMERSET SCI; ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY UNION COUNTY

——————————_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cv-02111)
District Judge: Honorable Yvette Kane

——————————_____

Argued on June 3, 2021

Before: AMBRO, HARDIMAN, and PHIPPS, Circuit Judges

(Opinion filed: August 10, 2021)

Tadhg Dooley
David R. Roth
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, CT 06510

Bianca Herlitz-Ferguson (**Argued**)
Yale Law School
127 Wall Street

New Haven, CT 06511

Counsel for Appellant[1]

D. Peter Johnson (**Argued**)
Union County Office of District Attorney
103 South 2nd Street
Lewisburg, PA 17837

Counsel for Appellees

---

OPINION[*]

---

AMBRO, Circuit Judge

Gerald Funk seeks our review of the District Court's denial of his petition for habeas corpus under 28 U.S.C. § 2254. We granted a certificate of appealability on the claim that his counsel was ineffective for failing to explain or advise him accurately about plea offers that were extended to him. For the reasons stated below, we affirm.

## I.     Background

In 1998, Gerald Funk allegedly attacked and raped a 64-year-old woman, resulting in charges of rape, aggravated assault, robbery, and attempted second- and third-degree murder. Funk claims he was willing to plead guilty to rape because there was DNA evidence linking him to the crime, but he was unwilling to plead guilty to the other charges. He reports this reticence created conflict with his first counsel, ultimately

---

[1] We express our thanks to the Yale Law School Advanced Appellate Litigation Project and the supervising attorneys from Wiggin & Dana for taking on this matter *pro bono*.
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

resulting in that counsel's withdrawal. Attorney Michael Suders subsequently stepped in to represent Funk, who now asserts that Suders provided ineffective assistance of counsel.

Throughout the proceedings there were several meetings about possible plea bargains. The record is murky as to the timing of these meetings. District Attorney Peter Johnson testified that the first meeting occurred in July 2000 outside of Funk's presence. Funk, by contrast, testified that he was present for a discussion with the District Attorney that month, but the details of his story closely align instead with Johnson's testimony relating to a second meeting in December 2000. Johnson reported that during the July meeting he offered a plea agreement where Funk could plead guilty to one count of rape. Funk did not accept this offer and now speculates that this is "presumably because it was never conveyed to him." Funk Br. at 9. Suders disputes this assertion, contending that he "always communicated" plea offers to Funk. App. at 286.

Johnson asserted that a second discussion regarding a plea deal occurred months later in December, immediately before trial but after the jury had been impaneled (as noted above, Funk testified that this meeting occurred in July). Both parties agree that Johnson directly offered Funk a deal that would result in a plea to one count of rape with a recommended sentence of 8 to 20 years. Johnson explained "how beneficial this plea would be" and there was no indication "at all" that Funk did not understand the terms of the plea agreement. App. at 233. Funk nonetheless rejected the plea offer and told Johnson, "I guess we're going to trial." App. at 262. He now claims this was because he believed the judge had a policy requiring any pleas made after jury selection to be "open"

3

pleas to all counts of the indictment, and he worried the judge would not accept a plea to just one count.[2]  App. at 277.  Funk contends that, although Suders and Johnson had already gotten the judge to waive this policy, Suders never took the time to explain that to him or to provide any guidance on whether he should accept Johnson's plea offer.

After trial began, Funk (likely suspecting the trial would not end well) asked Suders if he could still accept the offer that Johnson had previously presented.  Suders "advised [Funk] about the . . . offer *and that it was open*."  App. at 291 (emphasis added).  Funk claims he interpreted this statement to mean that he could still accept the plea offer, but it would have to be an "open" plea to all counts.  He argues that Suders therefore misrepresented the terms of the offer by again failing to mention that the judge had waived his "open-plea" policy.  Funk claims that because he was unwilling to plead to any count but rape, he did not accept the offer.

After trial, the jury convicted Funk.  His sentence was 30 to 60 years' imprisonment.  In December 2003, after an unsuccessful appeal, Funk filed a Pennsylvania Post Conviction Relief Act ("PCRA") petition, which he later amended to include a claim that Suders provided ineffective assistance of counsel.  In the course of a protracted procedural history, the PCRA Court held hearings at which Suders, Funk, and

---

[2] There are notable inconsistencies in Funk's recollections.  For example, before the PCRA Court, Funk testified that he was confused about whether the plea offer was viable because he believed Johnson had been disqualified from prosecuting the case and that it was dismissed.  App. at 261–62, 276.  On appeal, he does not claim any confusion on that basis.  Nor does he explain why he would have told Johnson "I guess we're going to trial" if he believed the entire case had been dismissed.

4

Johnson testified. It found Suders' and Johnson's testimony credible and rejected Funk's ineffective assistance claim.

The Commonwealth court proceedings eventually concluded in September 2018 when the Pennsylvania Supreme Court denied Funk's request for reconsideration of his claims. Funk then filed a federal habeas petition. The Magistrate Judge recommended the petition be denied, and the District Court adopted this recommendation. Funk appeals to us.

## II.     Discussion

### A.     Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2254(a). We have jurisdiction under 28 U.S.C. § 2253. We apply the same standard as the District Court in reviewing the state court's decision. *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations on the merits." *Taylor v. Horn*, 504 F.3d 416, 428 (3d Cir. 2007). Accordingly, we may overturn a state-court holding only if it was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant [for a writ of habeas corpus]

5

shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence." *Id.* § 2254(e)(1).

Funk argues the PCRA Court relied on an unreasonable application of federal law

when deciding that Suders did not provide ineffective assistance.  The federal law at issue

here is the test for ineffective assistance articulated in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.

466 U.S. 668, 687 (1984).  In this context, we determine "whether the state court's

application of the *Strickland* standard was unreasonable"[3] or, in other words, "whether

there is any reasonable argument" that counsel's performance satisfied the *Strickland*

standard.  *Harrington v. Richter*, 562 U.S. 86, 101, 105 (2011).  "The standards created

by *Strickland* and § 2254(d) are both highly deferential, . . .  and when the two apply in

tandem, review is doubly so."  *Id.* at 105 (internal quotation marks and citations omitted).

B.      Analysis

Funk argues to us the PCRA Court erred by misconstruing the *Strickland* issue as

whether Suders *informed* him of the plea offer instead of whether counsel adequately

*explained* the offer.  *See* Funk Br. at 23, 24 (citing *Missouri v. Frye*, 566 U.S. 134 (2012);

*Lafler v. Cooper*, 566 U.S. 156 (2012); *Hill v. Lockhart*, 474 U.S. 52 (1985)).  As an

---

[3] The PCRA Court applied the Pennsylvania standard for judging ineffective assistance of
counsel claims.  That presents no concern, as we have previously held that this standard
is consistent with *Strickland*.  *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

6

initial matter, it appears Funk told the PCRA Court that this case raised a "failure-to-inform" issue. *See* App. at 302 ("Suders at no time informed [Funk] the plea offer in fact remained available"). And even if the PCRA Court could have explored the nuances of Funk's argument more thoroughly, he still fails to satisfy the first prong of *Strickland*.[4]

### 1. The July 2000 Plea Offer

Funk asserts that it "stands to reason" that Suders failed to communicate the July 2000 plea offer to him, for otherwise he would have accepted it. Funk Br. at 29. But Suders testified that he "always communicated" plea offers to Funk, and the PCRA Court found Suders credible. App. at 286, 333. Funk's unsupported speculation to the contrary is insufficient to enable us to conclude that Suders failed to satisfy *Strickland*'s deferential standard.

### 2. The December 2000 Plea Offer

Second, Funk asserts that Suders provided ineffective assistance during the December 2000 plea-related meeting because he failed to disclose that the judge had waived his "open-plea" policy and did not explain the plea offer or give advice on whether Funk should take it. As noted above, the PCRA Court found Suders' testimony more credible on this issue than Funk's. And Johnson's testimony, which the PCRA Court also found credible, indicates the plea offer was thoroughly explained by him to Funk and there was no indication "at all" that Funk did not understand the terms. App. at 233. It appears that Suders and Funk had discussed the benefits and drawbacks of

---

[4] As we hold that Funk has not satisfied the first *Strickland* prong of deficient performance, we do not reach its second prong.

7

various plea options throughout the course of the proceedings, and Funk made clear that he was looking to plead guilty to one count of rape. Despite having received a plea offer containing the exact terms he wanted, Funk took matters into his own hands and told Johnson, "I guess we're going to trial." App. at 262. As the PCRA Court concluded, Suders "fulfilled his duty" and Funk nonetheless "rejected the plea agreement and chose to take his chances at trial." App. at 333.

### 3. The Plea Discussion After Trial Began

Finally, Funk argues Suders provided ineffective and inaccurate counsel about the terms of the plea offer after trial began. But Suders testified before the PCRA Court that he "advised" Funk about the offer and its potential consequences, and Funk "understood" the offer but decided he wanted to continue with trial. App. at 291–292. The PCRA Court found this testimony more credible than Funk's, and Funk has provided no basis for us to second guess that finding.

Funk hinges his argument on a two-sentence exchange between Johnson and Suders during the hearing in the PCRA Court: "[Johnson:] So you advised [Funk] about the eight to 20 offer and that it was open? [Suders:] Right." App. at 291. Funk interprets this statement to mean that Suders misrepresented that any plea deal would have to be an "open" plea to all counts. This argument is unsupported by the record. Suders did not admit to misrepresenting any aspect of the deal. His use of the term "open" could reasonably be interpreted to mean that he told Funk the plea offer was still available, not that the plea would have to be an "open" plea to all counts. It is therefore not clear that Suders made a misrepresentation at all. Moreover, Funk does not explain how he could

8

have believed a *one-count* offer for "eight to 20 years" was instead an "open" plea to *all*

*counts*.  In this context, we cannot conclude Suders' performance was deficient.[5]

\* \* \* \* \*

We thus affirm the District Court's denial of Funk's habeas petition.

---

[5] Funk also alleges the PCRA Court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), as it failed to parse out the three separate instances of alleged ineffective assistance of counsel.  While the Commonwealth court did not engage in depth with the nuances of the timeline, this claim fails for the reasons stated above, as Funk has not demonstrated that Suders provided ineffective counsel even when considering the full timeline and the appropriate legal standard.