******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SCOTT PALMENTA *v.* COMMISSIONER
OF CORRECTION
(AC 34810)

Bear, Keller and Harper, Js.*

*Argued April 24—officially released September 9, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Anand V. Balakrishnan*, assigned counsel, with
whom, on the brief, was *Richard A. Reeve*, assigned
counsel, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Maureen Platt*, state's
attorney, and *Richard K. Greenalch*, *Jr.*, special deputy
assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Scott Palmenta, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion in denying his petition for certification to appeal and improperly rejected his claim of ineffective assistance of trial counsel. We dismiss the appeal.

The record reveals the following relevant facts, as found by the habeas court, and procedural history. On July 15, 2008, the petitioner appeared before the trial court to enter into a plea agreement concerning two criminal matters. At that time, he was represented by Attorney Charles Thompson. The petitioner pleaded guilty in docket number CR-07-124076 to burglary in the second degree in violation of General Statutes § 53a-102, attempt to commit larceny in the third degree in violation of General Statutes §§ 53a-49 and 53a-124, and criminal mischief in the second degree in violation of General Statutes § 53a-116. He also pleaded guilty in docket number CR-07-125614 to burglary in the third degree in violation of General Statutes § 53a-103, identity theft in the third degree in violation of General Statutes § 53a-129d, and larceny in the fifth degree in violation of General Statutes § 53a-125a. These pleas were entered pursuant to the *Alford* doctrine.[1]

After the petitioner had entered his guilty pleas but before they had been accepted by the court, it became apparent that Attorney Thompson had misadvised the petitioner that the plea agreement was for a total effective sentence of seven years of incarceration followed by two years of special parole, when the offer was actually for nine years of incarceration followed by six years of special parole. The court informed the petitioner of the correct terms of the plea offer, left the petitioner's guilty pleas intact, and agreed to continue the matter to provide the petitioner with the opportunity to decide whether he wanted to accept the plea agreement under the correct terms.

On August 27, 2008, the petitioner appeared before the court, but the plea agreement was not addressed, as the petitioner made an application for the services of a public defender and Attorney Thompson was permitted to withdraw. On September 30, 2008, the petitioner returned to court, this time represented by Attorney Christopher Cosgrove, a public defender. Attorney Cosgrove requested a continuance to familiarize himself with the case and the plea agreement. The petitioner's guilty pleas were not discussed at that time, and were not discussed again until January 21, 2009, when the petitioner, through Attorney Cosgrove, asked that his prior guilty pleas be vacated and that both cases be set down for a jury trial, effectively rejecting the

plea offer.

On May 9, 2009, prior to jury selection, the petitioner entered open pleas pursuant to the *Alford* doctrine to all of the charges in docket number CR-07-124076 and docket number CR-07-125614.[2] The petitioner also admitted to being a persistent serious felony offender under part B of the information pursuant to General Statutes § 53a-40 (c) and (j) in both dockets. On August 7, 2009, after hearing argument from the state and Attorney Cosgrove, the court sentenced the petitioner to a total effective term of thirty years imprisonment, suspended after ten years, followed by five years of probation.

On September 16, 2009, the petitioner filed a petition for a writ of habeas corpus, and, on April 16, 2012, he filed his fourth amended petition, alleging ineffective assistance by Attorney Cosgrove. The habeas court held a trial in connection with the amended petition on April 19, 2012, and issued its memorandum of decision denying the petition on June 12, 2012. On June 25, 2012, the court denied the petition for certification to appeal. This appeal followed.[3]

We begin by setting forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying [a] two-pronged test . . . . First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits." (Citations omitted; internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, 151 Conn. App. 559, 564–65, A.3d (2014). "To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court." (Internal quotation marks omitted.) *Patterson* v. *Commissioner of Correction*, 150 Conn. App. 30, 34, 89 A.3d 1018 (2014).

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation

marks omitted.) *Person* v. *Commissioner of Correction*, 146 Conn. App. 477, 480, 78 A.3d 213, cert. denied, 310 Conn. 960, 82 A.3d 627 (2013). "A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness." (Internal quotation marks omitted.) *Blake* v. *Commissioner of Correction*, 150 Conn. App. 692, 697–98, 91 A.3d 535, cert. denied, 312 Conn. 923,     A.3d     (2014). To show prejudice from ineffective assistance of counsel where a plea offer has been rejected because of counsel's deficient performance, a petitioner must establish that "(1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012) (interpreting *Missouri* v. *Frye*,     U.S.     , 132 S. Ct. 1399, 182 L. Ed. 2d 379 [2012], and *Lafler* v. *Cooper*,     U.S.     , 132 S. Ct. 1376, 182 L. Ed. 2d 398 [2012]), cert. denied sub nom. *Arnone* v. *Ebron*,     U.S.     , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). "Because both prongs must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 144 Conn. App. 365, 370, 73 A.3d 776, cert. denied, 310 Conn. 918, 76 A.3d 633 (2013).

On appeal, the petitioner argues that the habeas court's finding of timely advice was "clearly erroneous when considered in light of the contemporaneous records of attorney-client communication presented by [the] petitioner that went unconsidered in either the memorandum of decision or response to [the] petitioner's motion for articulation." Specifically, he asserts that prior to January 21, 2009, Attorney Cosgrove failed to advise the petitioner of the effect of the 2008 amendment to General Statutes § 54-125a, which increased the portion of a sentence that a person convicted of violating § 53a-102 must serve before becoming eligible for parole from 50 percent to 85 percent.[4] We are not persuaded.

In determining that there was no deficiency in the performance of Attorney Cosgrove, the habeas court heavily credited Attorney Cosgrove's testimony that he had researched and discussed the relevant parole eligibility issues with the petitioner on or before January 21, 2009.[5] "As an appellate court, we do not reevaluate the credibility of testimony, nor will we do so in this case. The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks

omitted.) *Johnson* v. *Commissioner of Correction,* supra, 144 Conn. App. 370–71. Furthermore, we are "entitled to presume that the trial court acted properly and *considered all the evidence.*" (Emphasis added; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction,* 306 Conn. 664, 690, 51 A.3d 948 (2012). Accordingly, we presume that the habeas court considered the evidence put forward by the petitioner, and we will not reevaluate the credibility of Attorney Cosgrove's testimony.

In light of the habeas court's findings as to the credibility of Attorney Cosgrove and the substance of his testimony, we agree with the court that the petitioner failed to establish that his performance was deficient. The petitioner has failed to establish that the issues he raised are debatable among jurists of reason, that a court could resolve them in a different manner or that the questions he raised are adequate to deserve encouragement to proceed further. See *Patterson* v. *Commissioner of Correction,* supra, 150 Conn. App. 34. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See *North Carolina* v. *Alford,* 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("[a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit [to] his participation in the acts constituting the crime").

[2] A plea canvass took place before the court on May 8, 2009.

[3] During the pendency of this appeal, the court issued an articulation on May 8, 2013, in response to the petitioner's motion for articulation.

[4] At the time of the petitioner's offense in 2007, a person convicted of burglary in the second degree would be eligible for parole after serving 50 percent of his sentence. General Statutes (Rev. to 2007) § 54-125a (a). Public Acts, Spec. Sess., January, 2008, No. 08-1, § 5, which went into effect on March 1, 2008, amended § 54-125a so that a person convicted of burglary in the second degree would be eligible for parole after serving 85 percent of his sentence. As of March 1, 2008, the petitioner had been arrested, but had not yet been convicted.

[5] This included testimony that Attorney Cosgrove made "significant efforts" to conduct legal research on the matter and to contact officials within the Department of Correction to inquire how the revision to § 54-125a was going to be applied to the petitioner's sentence; that he reported to the petitioner that the Department of Correction intended to interpret the law to apply to the date of the petitioner's conviction, meaning that the petitioner would be required to serve 85 percent of his sentence before being eligible for parole; that he advised the petitioner that on the basis of his own research, he believed that the application of the 85 percent requirement would likely violate the petitioner's rights against the application of ex post facto laws, but that any such challenge would have to be taken up *after* a conviction was imposed and the law was applied to him in an adverse manner; and that he made "continuing efforts" to research and discuss the issue with the petitioner "from the time the petitioner initially raised the matter in or around October, 2008, through and including the petitioner's sentencing on August 7, 2009."