# State of New York
# Court of Appeals

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 15
The People &c.,
         Respondent,
      v.
Mamadou Ba,
         Appellant.

Lauren E. Jones, for appellant.
Meghan McLoughlin, for respondent.

Order insofar as appealed from reversed and case remitted to the Appellate Term, First Department, for a determination whether defendant's sentence is unduly harsh or severe (CPL 470.45 [6] [b]). Acting Chief Judge Cannataro and Judges Rivera, Garcia, Wilson, Singas and Troutman concur, Judge Garcia in a concurring opinion, in which Acting Chief Judge Cannataro and Judge Singas concur and Judge Troutman in a separate concurring opinion, in which Judges Rivera and Wilson concur.

Decided March 21, 2023

- 1 -

GARCIA, J. (concurring):

I agree with my concurring colleagues that the case should be remitted for the

Appellate Term to review defendant's sentence. While I do not assume that the Appellate

Term misapprehended its plenary power to reduce a sentence as "unduly harsh or severe" (CPL 470.15 [6]), I agree that the better course in this unique case is to have that court clarify its basis for declining to reduce defendant's $500 fine.

Defendant, charged with various crimes related to the selling of counterfeit designer handbags, pleaded guilty to one count of unlicensed general vending, a misdemeanor (Administrative Code of the City of NY § 20-453). Violations of that section are "punishable by a fine of not less than two hundred fifty dollars nor more than one thousand dollars, or by imprisonment for not more than three months or by both such fine and imprisonment" (Administrative Code of the City of NY § 20-472). Defendant was offered a choice of sentence: three days of community service or a $500 fine. He chose to pay the fine. Defendant appealed, arguing, among other things, that his sentence was "harsh and unnecessary" and was "likely to create a financial hardship for him."

As reflected in the statute, intermediate appellate courts possess the discretionary power to modify or reduce a sentence in the interest of justice where the sentence is unduly harsh or severe under the circumstances (NY Const, art. VI, §§ 4 [k], 7 [a], 8 [a]; *see* CPL 470.15 [6] [b]; *People v Pollenz,* 67 NY2d 264, 267-269 [1986]; *People v Thompson,* 60 NY2d 513, 519-520 [1983]). This discretionary sentence review power, which is not subject to legislative restriction (*Pollenz*, 67 NY2d at 268), is "broad" and "plenary" and applies even where a sentence is within the permissible statutory range or is the result of a bargained-for plea (*People v Delgado*, 80 NY2d 782, 783 [1992]; *Thompson*, 60 NY2d at 520). When affirming a sentence, the appellate court is not required to provide a basis for

declining to exercise its interest of justice jurisdiction to modify or reduce a sentence (CPL 470.25 [1]; *see People v Mingo*, 9 NY3d 938 [2007]).

Here, the Appellate Term "perceive[d] no basis for reducing the fine" (73 Misc 3d 148[A], 2022 NY Slip Op 50004[U] [App Term, 1st Dept 2022]). The Court stated that "[d]efendant received the precise sentence for which he had bargained, which was within the permissible statutory range" (*id.*).[1] As my concurring colleagues note, the negotiated sentence may provide support for the court's conclusion that it is not unduly harsh or severe (Troutman, J., concurring op at 7). That is especially true where, as here, the sentence was a fine and the defendant chose to pay that amount over the option to perform community service. My concurring colleagues would read the language of the Appellate Term decision to mean the court believed itself bound to affirm the sentence merely because it was the result of a plea bargain (Troutman, J., concurring op at 8). I read the Appellate Term's holding instead to mean that it did not find defendant's sentence unduly harsh or severe under these circumstances (*see Delgado*, 80 NY2d at 783), but agree to remit to that court for clarification of the basis for its decision.

---

[1] With respect to the Appellate Term's reference to the permissible statutory range, appellate courts may reverse or modify an illegal sentence regardless of whether the issue was raised on appeal (*see People v Price*, 140 AD2d 927 [4th Dept 1988]; CPL 470.15 [2] [c]).

TROUTMAN, J. (concurring):

On appeal to an intermediate appellate court, a criminal defendant may seek to invoke the court's power to reduce the sentence—even one negotiated as part of a plea bargain—on the ground that such sentence is "unduly harsh or severe" (CPL 470.15 [6]

- 1 -

[b]; *see People v Thompson*, 60 NY2d 513, 520 [1983]).  Here, the Appellate Term erred in treating the bargained-for nature of defendant's sentence as dispositive of his challenge to the severity of the sentence.

## I.

In 2016, defendant was selling counterfeit designer handbags on a Manhattan street corner when the police arrested him and charged him with trademark counterfeiting in the third degree (Penal Law § 165.71), unlicensed general vending (Administrative Code of City of NY § 20-435), and failure to display a license (*id.* § 20-461).  Defendant pleaded guilty to one count of unlicensed general vending in exchange for a $500 fine and the dismissal of the remaining counts.  Defendant contended on appeal that, among other things, the fine was "harsh," "excessive," and "unnecessary," in part because during the pendency of the appeal the prosecutor's office stopped prosecuting charges of unlicensed general vending.  The Appellate Term rejected that contention:  "We perceive no basis for reducing the fine.  Defendant received the precise sentence for which he had bargained, which was within the permissible statutory range" (73 Misc 3d 148[A], 2022 NY Slip Op 50004[U], at *1 [App Term, 1st Dept 2022]).

## II.

The intermediate appellate courts have the power to vacate a sentence that falls outside the permissible statutory range on the ground that the "sentence was unauthorized, illegally imposed or otherwise invalid as a matter of law" (CPL 470.15 [4] [c]), and the courts have exercised that power regardless of whether either party addressed the illegality

on appeal (*see e.g. People v Jones*, 118 AD3d 1361, 1362 [4th Dept 2014]; *People v Ryan*, 83 AD3d 1128, 1130 [3d Dept 2011]).

An entirely separate power is the intermediate appellate courts' authority to reduce a criminal sentence as a matter of discretion in the interest of justice, which is an inherent power of those courts enshrined in the New York State Constitution (*see* NY Const, art VI, § 4 [k]; *People v Pollenz*, 67 NY2d 264, 267-268 [1986]; *Thompson*, 60 NY2d at 520). This power is codified under CPL 470.15 (6) (b) and CPL 470.20 (6), the former of which provides that the intermediate appellate court may modify a judgment of conviction if the court finds that the "sentence, though legal, was unduly harsh or severe." The question whether a sentence is unduly harsh or severe is addressed to the discretion of the intermediate appellate court (*see Thompson*, 60 NY2d at 519), which has "broad, plenary power" to reduce a sentence "without deference to the sentencing court" (*People v Delgado*, 80 NY2d 780, 783 [1992]).

The Appellate Division, as New York's preeminent intermediate appellate court, has long understood its power to modify sentences as an important check on the sentencing court's own broad discretion. Over a century ago, the Third Department lamented that "many an unjust sentence has been endured because counsel have failed to invoke the powers of the appellate tribunals to temper individual prejudices with judicial discretion" (*People v Miles*, 173 App Div 179, 182 [3d Dept 1916]). Some decades later, the Second Department, faced with a challenge to the severity of a plea-bargained sentence, observed that "[m]uch of the controversy and criticism swirling about the contemporary sentencing scene relates to inequitable disparities between sentences for the same or similar crimes"

(*People v Suitte*, 90 AD2d 80, 84-85 [2d Dept 1982]). The Court opined that the intermediate appellate court's sentencing power "obviously is a useful means of diminishing sentencing disparity . . . and ensuring the imposition of fair sentences" (*id.* at 85). Thus, the Court, although sensitive to the fact that its rulings would become guidelines for sentencing courts in future prosecutions, recognized its power to "substitute [its] own discretion for that of a trial court which has not abused its discretion in the imposition of a sentence" (*id.* at 86; *accord People v Thomas*, 194 AD3d 1405, 1406 [4th Dept 2021], *lv denied* 37 NY3d 1165 [2022]; *People v Mitchell*, 168 AD3d 531, 532 [1st Dept 2019]).

As *Suitte* suggests, this power is not diminished in plea-bargained cases. Indeed, when the legislature enacted a statute barring interest-of-justice review of negotiated sentences, this Court unanimously struck the enactment down as an unconstitutional curtailment of judicial power (*see Pollenz*, 67 NY2d at 267-268). A rule disqualifying negotiated sentences from review for harshness or severity would also be incongruous. The sentencing court itself is not bound by the terms of a plea bargain negotiated by the parties but must in all cases exercise its discretion and impose an "appropriate sentence . . . after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation and deterrence" (*People v Farrar*, 52 NY2d 302, 305 [1981]). An intermediate appellate court reviewing a defendant's challenge to the severity of a negotiated sentence may similarly impose a lesser penalty and is not bound by the parties' agreement (*see Thompson*, 60 NY2d at 520).

Nor should it be.  The vast majority of criminal sentences result from the plea bargaining process (*see* Hon. Jonathan Lippman, *Foreword* to New York State Association of Criminal Defense Lawyers [NYSACDL], *The New York State Trial Penalty:  The Constitutional Right Under Attack* 3 [2021]), which has become an indispensable feature of our system of criminal justice (*see Missouri v Frye*, 566 US 134, 143-144 [2012] ["(P)lea bargains have become . . . central to the administration of the criminal justice system"]). "Plea and sentence negotiation further important policy considerations, conserving law enforcement, judicial and penal resources, and permitting the parties to avoid the uncertainties inherent in the lengthy process of charge, trial, sentence and appeals, thereby 'starting the offender on the road to possible rehabilitation' as soon as practicable" (*People v Avery*, 85 NY2d 503, 506 [1995]).  At the same time, "[t]he prosecutor has more control over life, liberty, and reputation than any other person in America" (Hon. Robert H. Jackson, Attorney Gen. of the United States, *The Federal Prosecutor,* Address at the Second Annual Conference of United States Attorneys 1 [Apr. 1, 1940], *available at* https://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf [accessed March 10, 2023]).  Consequently, although plea bargaining involves negotiation, the parties to that negotiation are seldom on equal footing.  Prosecutors have full discretion over what charges to bring and what offers to make (*see* I. Bennett Capers, *The Prosecutor's Turn*, 57 Wm & Mary L Rev 1277, 1296 [2016] ["The prosecutor's outsized power is attributable in part to (their) almost unfettered discretion"]).  Defendants, on the other hand, have far more to lose than prosecutors do—liberty, most significantly—which makes them unlikely to risk a lengthier sentence after an unsuccessful trial (*see* Vikrant P.

Reddy & R. Jordan Richardson, *Why the Founders Cherished the Jury*, 31 Fed Sentencing Rep 316, 318 [Apr./June 2019]; H. Mitchell Caldwell, *Coercive Plea Bargaining:  The Unrecognized Scourge of the Justice System*, 61 Cath U L Rev 63, 72-73 [2011]; NYSACDL at 23-29).  To be sure, plea bargaining affords benefits to many defendants in the form of swift resolution, dismissal of certain charges, and reduced sentencing exposure (*see Frye*, 566 US at 144).  But the imbalance of power inevitably leads "to innocent defendants pleading guilty and to guilty defendants serving sentences disproportionate to their crimes" (Caldwell at 73; *see* Hon. Jed S. Rakoff, *Why Innocent People Plead Guilty,* NY Review of Books [Nov. 20, 2014], *available at* http://www.nybooks.com/articles/2014/11/20/why-innocent-people-plead-guilty/ [accessed March 10, 2023]).

Sentence disparities result.  Indeed, there is empirical evidence of "troubling racial disparities in plea-bargained cases," not only in the severity of sentence but in the prosecutor's willingness to offer defendants the chance to plead to reduced charges (Daniel S. McConkie, Jr., *Plea Bargaining for the People*, 104 Marq L Rev 1031, 1056 [2021]; *see* Ram Subramanian et al., *In the Shadows:  A Review of the Research on Plea Bargaining* 24-29 [Sept. 2020]; Carlos Berdejó, *Criminalizing Race:  Racial Disparities in Plea-Bargaining*, 59 BC L Rev 1187, 1213-1238 [2018]; *see also Ring v Arizona*, 536 US 584, 617 [2002, Breyer, J., concurring]).  The Justices of our intermediate appellate courts— experienced in reviewing cases on the cold page and assessing the severity of legions of sentences for the same classes of offenses—may be less likely to be affected by certain

kinds of bias that lead to sentencing disparities (*see* Michael M. O'Hear, *Appellate Review of Sentences: Reconsidering Deference*, 51 Wm & Mary L Rev 2123, 2141-2143 [2010]).

None of this is to say that the negotiated nature of a plea-bargained sentence is irrelevant. Rather, the fact that a defendant voluntarily agreed to a sentence can provide at least some support for a determination that the sentence is not "unduly harsh or severe under the circumstances" (*Delgado*, 80 NY2d at 783), and thus the intermediate appellate court may properly consider the bargained-for nature of the sentence, among other appropriate considerations, in determining whether the sentence is unduly harsh or severe (*see e.g. People v Rice*, — AD3d —, 2023 NY Slip Op 00568, at *1 [4th Dept Feb. 3, 2023]; *People v Scott*, — AD3d —, 2023 NY Slip Op 00589, at *1 [4th Dept Feb. 3, 2023]; *People v Jeremiah*, 186 AD3d 740, 741 [2d Dept 2020], *lv denied* 35 NY3d 1113 [2020]). However, the mere fact that the sentencing court imposed the sentence that a defendant bargained for is not dispositive of that defendant's appellate challenge to the severity of the sentence.

### III.

These principles in mind, we consider the order on appeal. The Appellate Term concluded that there was "no basis for reducing the fine" (73 Misc 3d 148[A], 2022 NY Slip Op 50004[U], at *1). Although the Court was not required to go further and set forth the basis for its conclusion (*see* CPL 470.25 [1]; *see People v Mingo*, 9 NY3d 938, 938 [2007]), here, it did so, reasoning that "[d]efendant received the precise sentence for which he had bargained, which was within the permissible statutory range" (73 Misc 3d 148[A], 2022 N.Y. Slip Op. 50004[U], *1). In other words, the sentence was legal and bargained-

for.  Certainly, the Appellate Term cannot be faulted for considering and addressing the legality of the sentence because the intermediate appellate courts "cannot allow an illegal sentence to stand" (*Jones*, 118 AD3d at 1362 [internal punctuation omitted]; *see* CPL 470.15 [4] [c]).  However, the legality of the sentence was irrelevant to the entirely separate issue of whether it was unduly harsh or severe (*see* CPL 470.15 [6] [b]), and it was improper for the Appellate Term to treat the bargained-for nature of defendant's sentence as dispositive of his challenge to the severity of the sentence.